# EXHIBIT 25

JA0000203

# Gravette Consulting LLC

## Tim Gravette

### 126 Playfair Drive

### Lafayette, Louisiana 70503

### 361-742-2500

I, Roy T. (Tim) Gravette have been retained as a corrections expert in the matter of the *Charles Joseph Freitag, JR., as Administrator of the Estate of Charles Joseph Freitag, SR. v. Bucks County; Primecare Medical, Inc.; Stephan Brautigam, PMHNP; Jessica Mahoney, PSY.D; Avia James, LPC; Christina Penge, LPC; Correctional Officer Moody; Correctional Officer Murphy; and Correctional Officer Young.* Case No: 2:19-cv-05750-JMG. United States District Court for the Eastern District of Pennsylvania.

## Background and Qualifications

I am a twenty-year corrections veteran. Nine of my twenty years was as Associate Warden with the Federal Bureau of Prisons.

My career assignments included work as a Correctional Officer at the Federal Correctional Institution in Talladega, Alabama from June 1990 until October 1993, Lieutenant at the Federal Detention Center and the Metropolitan Correctional Center in Miami, Florida and Lieutenant at the Federal Correctional Institution in Estill, South Carolina. I was a Lieutenant from October 1993 until December 1997. I was a Captain at the Federal Detention Center in Oakdale, Louisiana and at the Federal Correctional Institution in Edgefield, South Carolina. My tenure as a Captain was from December 1997 until November of 2001. My assignments as Associate Warden were from November of 2001 until my retirement in June 2010. My assignments were at the Federal Correctional Institution Talladega, Alabama, the Federal Correctional Complex in Beaumont, Texas and at the Federal Correctional Institution in Three Rivers, Texas. During my assignment at the Federal Correctional Complex in Beaumont I was assigned to the medium security facility for two years, as the Associate Warden at the Central Administration Building for a period of five months and to the United States Penitentiary for my final seven months. When my career began as a Correctional Officer, I was assigned in the inmate housing units, as a compound patrol officer, and to various other duties assigned where I had direct supervision of the inmate population. As a Lieutenant, I would make rounds throughout the facility as part of my daily duties and interact with the inmate population in their assigned units, work assignments and leisure time activities. As my career progressed, I was promoted to Captain. During my time as a Captain, I was

Freitag001430

responsible for the Correctional Officers' daily duties and all other aspects of the safety, security, and orderly running of the facility.

As an Associate Warden, I had the responsibility to oversee and direct staff in the performance of their daily duties. I wrote and critiqued local policy and made decisions which affected the safety, security, and orderly running of the facility to which I was assigned. The policies were written using the principles of sound and proven correctional management, Federal law and standards provided by the American Correctional Association (ACA). I wrote lesson plans, taught classes, and wrote performance appraisals for our staff. I have commanded and been involved in incidents of emergency response for medical emergencies, inmate disturbances, hostage situations, assaults, suicides, homicides, and attempted escapes.

A copy of my Curriculum Vitae is attached as exhibit A.

## Basis of Opinions

After a careful evaluation of the facts and circumstances that are known to me as a result of the review of the materials available (which are attached as Exhibit B), and taking into account my experience, training and knowledge of the practices that should be standard in all correctional facilities, I have formed several opinions, to a reasonable degree of certainty that are applicable to the correctional profession and the suicide of Charles Freitag on 08/25/2018. At the time of his suicide Freitag was in the custody and care of the Bucks County Correctional Facility (BCCF) in Doylestown, Pennsylvania.

As to the facts presented of which I am aware, I applied my experience and training and my twenty-year career as a corrections veteran concerning inmate culture, correctional investigative practices, sound correctional management, proper correctional environmental practices, inmate management and correctional administration experience in forming my opinions. I understand that additional information may be provided to me which may to some extent add to, change, or alter my opinions. I reserve the right to supplement my opinions and or this report based on any said additional facts or materials that may come forward after the scheduled expert disclosure date.

## Suicide Charles Freitag 08/25/2018

On 08/25/2018 Charles Freitag was found in his assigned cell at the BCCF with self-inflicted laceration wounds on his arms. It has been determined Freitag used part of a broken coffee cup which was in his cell to injure himself. Per the investigation by Investigator Daniel Onisick "On August 25, 2018, at 1057 hours, B-Module Officer Robert MOODY responded to cell B-3 after being alerted by I/M John MONACHELLI

2

JA0000205

#091313 who was walking past the cell, that the inmate inside was "covered in blood". Officer MOODY immediately responded to the cell and discovered IM Charles FREITAG #125635 slumped over the lower bunk, kneeling with his arms tucked beneath him in a pool of blood. Officer MOODY advised Officer Robert YOUNG to call a Medical Emergency and responding officers and medical personnel arrived on B Module and immediately began rescue efforts." (AGBCC-0004) Investigator Onisick also included a timeline of the events which were seen on video surveillance footage of traffic in and around Freitag's cell door. "The detectives and chief investigator conducted a review of the module video and determined that no entry was made into I/M FREITAG'S cell from 0916 hours until he was discovered by I/M MONACHELLI at 1055 hours. (See Attached Supplemental Report from Chief Investigator BOCHENEK). A timeline of the video review is posted below." (AGBCC-0005)

- 9:03:58   - I/M Justin KUNZMANN departs Cell B3
- 9:12:00   - I/M FREITAG exits Cell B3 for medication
- 9:16:00   - I/M FREITAG returns to Cell B3
- 10:04:19  - C/O Checks Cell B3
- 10:21:28  - C/O Checks Cell B3
- 10:55:39  -I/M MONACHELLI looks in cell and alerts C/O & Emergency Code called
- 10:57:08  - Medical Staff and Officers remove  I/M FREITAG from Cell B3

I have also reviewed the video surveillance footage and the timeline provided by Investigator Onisick. Along with the timeline above and the video footage I reviewed the Bravo Module Activity Log Report. (AGBCC-0099-0101) Based on my review of the Activity Log I have found inaccurate entries by the correctional officers and my review of the video footage shows a lack of proper supervision of the inmates housed in Bravo Module on the morning of 08/25/2018 by Officers James Young and Robert Moody.  Based on my review of the video footage Officers Moody and Young spent a great deal of time at the officers' podium. (similar to an office cubicle)  Correctional staff assigned to inmate housing areas are required to make tours of the inmate living area and observe each and every inmate in the module to ensure everyone is safe and there are no signs of distress.  The activities noted in the Bravo Module activity logs do not match what I observed during my review of the video footage.  Below is a list of times and activities as noted in the Bravo Unit Activity Log for 08/25/2018 starting at 6:03 am when Officers Moody and Young assumed their posts.  I have also noted on the relevant times discrepancies in what the video evidence shows and what is entered in the Activity Log.


- 6:03 Second Shift Start Moody and Young assume post.
- 6:16 Toured Module inmates observed unit unlocked. Note: the last tour was at 5:27 49 minutes prior.

Freitag001432

JA0000206

- 7:09 Toured Module. 53 minutes elapsed. Note: per the video footage this Tour did not take place.
- 7:34 unit observed. 25 minutes elapsed. Note: Actual time elapsed 1 hour and 18 minutes.
- 8:14 Toured Module. 40 minutes elapsed.
- 8:47 Toured Module. 33 minutes elapsed.
- 9:01 Toured Module. 14 minutes elapsed. Note: Based on the video footage this Tour did not take place.
- 9:22 Toured Module. 21 minutes elapsed. Actual time elapsed per the video 45 minutes between Tours.
- 11:59 Late Entry. Medical emergency called for 3 cell at 10:56.

Bucks County Department of Corrections Standard Operating Procedures and Guidelines, Watch and Observation Officer has specific procedures for the module officers to follow for inmate Level 3 observations. (AGBCC-00421-00422) Charles Freitag at the time of his suicide was classified as a Level 3 watch inmate by the BCCF. On page 2 of the Procedures it states: 4. Level 3- This level of watch is not used for suicide prevention but reserved for the inmate whose behavior warrants closer observation.

- A. This inmate will have all the privilege of any other inmate.
- B. The inmate monitor will observe their activities every 15 minutes and log them on the monitor form.
- C. The officer will observe all inmates including inmates on this level of watch in staggered intervals not to exceed 30 minutes and make the appropriate entries in the electronic logbooks. (ex. All inmates observed no issue to report at this time).

Based on my review of the video footage the time which elapsed between Officers Moody and Young conducting Module Tours and observing the inmates in Bravo Module shows a violation of BCCF procedures for the observation of the inmates assigned to their area of responsibility.

- The first tour at 6:16 am, was a violation of policy by 19 minutes.
- The 7:34 am tour was a violation of 54 minutes.
- The 9:22 am tour was a violation of 5 minutes.
- Per the video Officer Murphy conducted a Tour at 10:04 am which based on the earlier Tour at 9:22 violating the procedure by 12 minutes.

Based on my review of the BCCF procedures, the video surveillance footage, and the activity logbook entries the inconsistencies are numerous on the morning of Freitag's death. The times of the observations exceed what is allowed by policy and procedures which is a violation by Officers Moody and Young. The activity log entries do not reflect the evidence captured in the video surveillance footage of the cell occupied by Charles Freitag. The time requirement for conducting Level 3 Watch is within a 30-minute window. Inmates

Freitag001433

JA0000207

have 24 hours a day to observe the routines of the correctional officers and when correctional staff fail to follow the proper procedures and guidelines the inmates take notice of the officers' complacency and take advantage of lack in supervision.

Per BCCF procedures the observation of a Level 3 inmate is also the responsibility of an inmate monitor. At the time of Freitag's suicide the inmate assigned to that duty was Hugh Caldwell. During my review of the video footage I observed the inmate monitor Caldwell checking on the welfare of Freitag two times in a 4 hour and 45-minute time frame. However, on the Inmate Regular Monitor Forms (AGBCC-00185-00186) Caldwell reported that first observation of Freitag was at 6:15 am and that he consistently observed him throughout the morning, with his last observation at 10:45 am. My review of the video footage does not support the documented times entered on the Monitor Forms. Caldwell did not check on Freitag 20 times as he indicated on the Monitor Forms. Caldwell looked in on Freitag on two occasions once at 8:47 am and again at 10:32 am. This failure to monitor Freitag as required is a violation of BCCF procedures as set forth in the Watch and Observation Procedures and Guidelines. (AGBCC-00422) Per BCCF procedures proper checks are required to be completed every 15 minutes. Had the procedures been followed as directed there would have been 20 checks by an inmate monitor to ensure the safety and wellbeing of Charles Freitag which was not done. Based on the video evidence Freitag was last observed at 10:32 am by inmate Hugh Caldwell. Most important, had the observations been conducted at 10:45 am (inmate monitor) and before 10:51 am (correctional officer) it is likely Freitag would have been discovered cutting himself and life saving measures would have started sooner. As I stated in the previous paragraph inmates are observant and they take advantage of the lack of timely watch checks. Based on my experience it is more likely than not Charles Freitag had closely observed the actions of Officers Young and Moody. Freitag had also done the same with Caldwell the inmate monitor. This lack of proper and timely supervision provided Charles Freitag an opportunity to harm himself in the period of between 10:32 am and 10:56 am when he was discovered by inmate Monachelli covered in blood.

The use of inmate monitors is not uncommon in the corrections industry when properly utilized and supervised. As indicated above on the morning of Freitag's death inmate Caldwell was not doing his job as he indicated on the Inmate Monitor Form. (AGBCC-0185-0186 and AGBCC-453-454) As every officer who testified in this case acknowledged, the officers assigned to the module have the responsibility to ensure the inmate monitor is doing his job and checking on his assigned watch inmates. There is no indication either Officer Moody or Officer Young checked on what Caldwell was doing at any point on 08/25/2018. The Monitor Form is not an accurate description of the morning activities of Charles Freitag. Caldwell assumed his duties at 6:00 am. His entries for the first hour indicate Freitag was sleeping in his cell. At 7:15 the form indicates Freitag was out of his cell eating. This is not accurate as Freitag did not leave his cell to go to the

Freitag001434

JA0000208

morning meal per the video footage. Per the form at 8:00 am Freitag was back in his assigned cell and sleeping and per the form Freitag continued to sleep until 10:45 am. This is also not accurate as indicated in the timeline by Investigator Onisick. Per the video evidence Freitag was out of his cell getting his medication in view of the video camera from 9:12 am until he re-entered his assigned cell at 9:16 am. The entries made by Caldwell also include his falsification of the Inmate Monitor Form by initialing the times on the Form prior to completing the designated checks. Caldwell's initials are present for the times of 11:00 am until 1:45 pm which further shows there was no supervision by the assigned correctional staff who had the responsibility of checking to make sure the inmate was doing his job. I would not allow an inmate or a staff member to make future entries on a monitor form because this is a violation of policy and procedures.

In his deposition Officer Young was asked about the responsibility for the inmate monitor program. Q. Do you ever look at those forms? A. Occasionally. Q. You are not supposed to look at them every day? A. You can. Normally the supervisors are supposed to check on those forms. (50-8-13) Based on my experience as a module officer and as a Lieutenant I do not agree with what Officer Young is saying about the checking of the Inmate Watch Forms for accuracy. Based on standard correctional practices the housing area officer is responsible for what the inmate workers do in his assigned unit. The supervisor makes rounds of the inmate housing area to ensure the officer is monitoring the inmates and the inmate workers are doing their job. Officer Young's statement that the supervisors check the forms is half right. The supervisor does check the form but what the supervisor is checking for is to ensure the module officer is checking the form and that the inmate workers are completing their assigned tasks as directed by policy and procedure.

Officer Moody agreed that Caldwell was not doing his assigned job of checking on Freitag's welfare as directed by policy with a "yes" answer at 99-11 in his deposition testimony. Officer Moody was also asked about his responsibility as a Module Officer to ensure Caldwell was checking on Freitag. Q. Would you agree it is your responsibility as an officer working on that block to ensure that Mr. Caldwell is fulfilling his responsibilities under the level 3 watch? A. Yes. (100-8) I agree it was Officer Moody's responsibility to ensure Freitag was being checked on as directed by BCCF policy and procedures. It was also the shared responsibility of Officer Young to do the same.

The answers given by Officers Young and Moody during their deposition testimonies is an indication there is a need for additional training or re-training and supervision of the module officers at the BCCF. Basic inmate supervision training is essential and must be stressed by supervisors on a regular basis. After my review of the case information provided, the video footage and the depositions of Officers Young and Moody it is apparent inmate supervision training and emphasis on conducting timely and proper inmate watch checks was not addressed before Freitag's suicide on August 25, 2018 and needs to be addressed by the administrators at

Freitag001435

JA0000209

the BCCF. It is obvious to all correctional professionals that watch procedures are put into place to protect the safety of inmates. It is, likewise, obvious that the failure to ensure that officers comply with those watch procedures through training, supervision, and discipline is likely to lead to the risk of inmates harming themselves as Charles Freitag did in this case.

The following is an excerpt from a signed statement by inmate Hugh Caldwell dated 02/17/2021. (Freitag01389) "After Charles died, I approached a Lieutenant who asked me how it was possible that Charles was able to kill himself if I was monitoring him. I believe it was Lieutenant Bahlaj. I told him I did not know. After Charles' death no other Correctional Officer or supervisor asked me any questions about what happened leading up to Charles' death. There was no effort to train inmate monitors and at no point in time either before or after Charles died did anyone ever evaluate my work. Additionally, no one reviewed the prison rules regarding inmate monitors' tasks with me and at no time was I ever supervised by a Correctional Officer while working as an inmate monitor. None of the Correctional Officers followed me to ensure that I was doing my work or even stood watch to make sure that I was checking on the inmates on my list." Based on this information provided by the inmate monitor on duty at the time of Charles Freitag's suicide my opinion about additional training and supervision related to inmate supervision and watch checks is again emphasized.

Additionally the following excerpts from the deposition testimony of Officer Young is an indication of a lack of supervision and training at the BCCF. The following testimony is related to the importance of timely 30-minute checks of the inmates on watch.

- Q. In addition to the inmate monitor, you have a responsibility here next to the letter C to look in the cell every 30 minutes; is that right? A. Yes.
- Q. Or a period not to exceed 30 minutes; is that correct? A. Yet again, in a perfect world, 30 minutes.

I find this answer by Officer Young to be inconsistent with customs and practices in the corrections industry. The 30-minute checks as directed in BCCF procedures is the same directive which is included in correctional standards nationwide. I have reviewed more inmate observation policies than I can recall over the last 30 years, and I am not aware of exceptions being made for non-emergency situations. When asked about not doing a 30-minute check on Freitag after the 10:21 am check Officer Young stated he was waiting because the other inmates in the module were returning from the recreation area. During my career in corrections I worked as a module officer on many occasions and that excuse is not logical and based on my years as a supervisor and administrator is not one that I would accept. Both officers Young and Moody were responsible for the safety and welfare of Charles Freitag at all times during their tour of duty on 08/25/2018. Using the excuse of being occupied with observing inmates walk through the module is a dereliction of duty and a violation of written procedures and directives. Bravo Module was a general population unit which means the

JA0000210

inmates move about without staff escorts. Officer Young was responsible for watching the inmates as they returned from recreation however it did not take away the obligation that 30-minute checks were still required. As indicated in the video footage Officer Young and Officer Moody were standing at the podium a short distance from where Freitag was housed in cell 3. There was no reason one of them or both could not have walked over to cell 3 and observed Freitag as directed by BCCF policy and customs and practices in the correctional profession.

Based on my review of the video footage and the associated documents neither Officer Young nor Officer Moody were fulfilling the obligations for the safekeeping of Freitag or the other inmates in Bravo Module on the morning of 08/25/2018. I cannot say with 100% certainty had all the checks been completed by Officers Young and Moody as directed by BCCF Procedures that Charles Freitag would not have harmed himself. I cannot say with 100% certainty had inmate Caldwell completed all the checks as directed by BCCF Procedures that Charles Freitag would not have harmed himself. I can say based on my experience and training as a correctional professional the likelihood of Freitag harming himself on the morning of 08/25/2018 would have been diminished by their presence conducting the welfare checks as directed by standard procedures and this tragic death more likely than not would have been avoided.

## BCCF Response Post Suicide of Charles Freitag

Following the death of Charles Freitag there was a Mortality Review completed on 09/12/2018 at the Bucks County Correctional Facility. This is a customary practice following the death of an inmate and Mortality Reviews are required by the National Commission on Correctional Health Care standards. As a result of the review a decision was made to place all state commitment inmates on Level 2 watch. The Level 2 Watch procedures are listed below.

LEVEL 2- This level of watch is for an inmate who has suicidal ideation but no plan to commit suicide. This inmate is not actively suicidal but express a prior history of self-destructive behavior and demonstrates other concerning behavior through their actions, current circumstances or recent history, indicating a potential for self-injury.

A. An inmate on this level of watch will be in a stripped cell with a prison uniform, a suicide mattress, a suicide blanket, and shoes with NO SHOELACES.

B. During this type of watch an inmate monitor will be posted outside the cell and maintain constant observation of the inmate and record his activities every 5 minutes on acute watch monitor form.

Freitag001437

JA0000211

C. THE OFFICER IS RESPONSIBLE FOR OBSERVING THE INMATE AT RANDOM INTERVALS NOT TO EXCEDE 15 MINUTES AND RECORD THE INMATE ACTIVITIES ON THE ACUTE WATCH MONITOR FORM.

D. An inmate on this type of watch will receive finger food, and their cell will be searched daily. Only a licensed mental health professional can modify or discontinue this type of suicide watch.

Had these procedures been in place 18 days earlier, the suicide of Charles Freitag more than likely would not have happened on 08/25/2018. Freitag would not have had the plastic coffee cup to break and use as a cutting device to harm himself and Freitag would have been under the constant supervision of an inmate monitor with a 15-minute officer check to ensure it is being done properly.

On 10/24/2019 Frank Bochenek, Lead Investigator at BCCF submitted a memorandum to the BCCF Director Chris Pirolli. The subject of the memorandum was a meeting that was held the day before 10/23/2019 to discuss three recent inmate suicides at the BCCF. Investigator Bochenek had met with Lindsay Hayes, Emily Scordellis and Dr. Abbey Cassidy. The following is information that was contained in that memorandum as it relates to Charles Freitag and his death. (AGBCC-0418)

"The incident involved Inmate Freitag housed in "B" Module. The circumstances are summarized as follows; Inmate Freitag was sentenced on a Friday afternoon to a lengthy State Facility Confinement. Deputy Warden of Security notified case management to have the inmate unlocked and placed on a level 3 CMHS regular watch with observation. A case management supervisor entered the alert into the OMS system and requested an afternoon case manager to notify the module officers. On the next day, Saturday, Inmate Freitag committed suicide in his assigned cell while his cell mate was not in the cell. The question was did the investigator look into the watch issue and check with the module officers to see if the watch was put into place. Investigators did not look into the issue. The focus was on the suicide incident gathering evidence, photographs, obtaining video and interviews with staff and inmates while assisting Bucks County Detectives who were requested to respond. The OMS entry showed Inmate Freitag being placed on the watch at about 1500 hours on that Friday. The Case Manager Supervisor made the entry and assigned a case manager to notify the module officers of the inmate status. In a follow up investigation it was learned there was no level 3 watch sheet prepared. In reviewing the video there was no inmate monitor observed checking on the inmate. It was observed that the cell assigned to Inmate Freitag was unlocked allowing Inmate Freitag to leave his cell. The Case Manager assigned to make the notification to the module officers was interviewed specifically does not recall calling the module or who received the call. The Case Manager believes they did call the module. The assigned module officers were not available for an interview. Seeing the cell door unlocked would

Freitag001438

JA0000212

give validity that a call was made as the inmate was removed from locked status. In future incidents a review of watch status will be conducted by investigations as a routine to determine if the procedures were followed. It is also recommended that when an inmate is placed on a watch that an entry be made into the inmate notebook by the case manager stating the status of the inmate, what level and what type of watch is issued, the date and time and the name of the module officer who was contacted by the Case Manger."

The memorandum points out the investigators failed to investigate the events surrounding the placement of Freitag on Level 3 watch and if the officers assigned to the module had instituted the proper procedures as directed by BCCF policy. The investigators also did not include any information about Officers Young, Moody and inmate Hugh Caldwell's performance of their duties including timely and documented watch checks of Charles Freitag. Based on my review of the 10/25/2018 investigation the emphasis was on determining if a crime had been committed and not on what actually took place in the hours leading up to the death of Freitag. Based on my review of the case material it is evident there is a need for additional training and supervision of the module officers at the BCCF. I agree with Bochenek's findings that there should have been more emphasis on the actual watch procedures by investigators after the death of Freitag, but this is an emphasis that was immediately apparent after the death. I conducted and supervised investigations during my career and the investigation of Charles Freitag's suicide appears to have been rushed and not well organized including the information gathered by Investigator Bochenek for his 10/23/2019 meeting. During the initial investigation in August of 2018 the investigators failed to question the inmate monitor who could have provided vital information about what activities were happening on 08/25/2018. Also, in Investigator Bochenek's memorandum he states the module officers were not available for an interview. Based on my experience as an investigator I find this to be out of the ordinary. Per the deposition testimonies of Officers Young and Moody they still work at the BCCF which would make them available for a follow-up interview. Also, there is no information I have reviewed that would indicate there was any type of disciplinary action taken against Officers Young and Moody. From my review of the video footage and the Activity Logs it is evident they falsified an official document (Activity Log) and they failed to follow procedures as outlined in BCCF policy in relation to conducting timely checks of the inmate population in their assigned module of 08/25/2018, the day of Charles Freitag's death.

### Present Opinions

The safety and security of the inmates in a correctional facility are the responsibility of the correctional staff entrusted with their care. The supervision of the inmates includes observation at various times as directed by local policies and procedures. The BCCF had procedures in place to monitor Charles Freitag on the day he

committed suicide, but the staff (Officers Moody and Young) failed to follow the policy. Therefore Freitag had a window of opportunity to harm himself with a broken and sharpened piece of a plastic coffee cup.

Freitag was discovered covered in blood in his assigned cell by an inmate who just happened to be passing by Cell 3 which Freitag occupied. Freitag was not discovered by either of the two assigned officers who were required to conduct 30-minute checks of the inmates or by the inmate monitor who was tasked with conducting checks of Freitag every 15-minutes. Once notified about the condition Freitag by the inmate passerby Officer Moody went to cell 3, opened the door and then closed the door back without entering the cell. Correctional professionals are trained to respond to inmates in need of emergency care and attention. Officer Moody did no more at this point than to tell Officer Young to call a medical emergency. In a situation like this one I fail to understand Officer Moody simply looking in the cell and then closing the door and waiting on responders to arrive. Officer Moody had over a decade of experience as a correctional officer, yet he did not render any type of aid or investigate what was going on with Freitag. Officer Moody's inaction to me is a form of indifference to the wellbeing of Freitag. In his deposition Officer Moody stated he did not go in the cell because he didn't know what was going on. Based on my experience and training opening a cell door yelling inside and then closing the door is not the way an experienced correctional professional finds out what is going on. Freitag was in the cell by himself, and I am of the opinion Officer Moody could have and should have done more to access the situation and possibly render aid.

Based upon my knowledge, education, training, and years of experience working as a correctional professional, it is my unequivocal opinion the officers charged with the supervision and observation of Charles Freitag did not follow proper policy and procedure and Charles Freitag went unsupervised for period of time that exceeded standards of care for an inmate on Level 3 watch. The failure of the officers to conduct their own checks and to supervise the inmate assigned to do periodic checks of Freitag contributed to his harming himself and his death at the BCCF on 08/25/2018. The fact that Moody and Young conducted themselves in this fashion is reflective of an atmosphere of indifference on the part of Bucks County in failing to continue to train and emphasize the importance of proper watch and security checks to the module officers. Additionally, based on my review of the provided case information there was no intervention by supervisory staff or disciplinary proceedings initiated against Officers Young and Moody for their failure to follow proper policies and procedures in relation to the death of Charles Freitag.

One of the most disturbing statements I have heard about an inmate suicide in my 30 years as a correctional professional was the following statement by Officer James Young during his deposition testimony. Officer Young stated, "Probably the easiest way for anyone not to commit suicide in jail is to stay out of jail."

Freitag001440

JA0000214

(16-14)  Based on my training and experience this type of callous statement by Officer Young is an indication of a lack of supervision, mentoring and training.  This is also an indication of Officer Young's indifferent opinion of the inmates he is charged with supervising.

Attachment B of this report identifies the information I reviewed in order to form my opinions in this case.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on the 30th day of January 2022.

*R. Tim Sparette*

## Compensation

Research, preparation, and report writing:     $250.00 per hour

Deposition and Court Time:                     $300.00 per hour

I require a $1200.00 minimum payment prior to the start of a deposition.

Travel is billed at actual costs with mileage being at the current rate set by the IRS.

## Prior Cases in Which I Have Testified as an Expert Witness in a Deposition and/or at Trial

**I have testified as an expert at trial within the proceeding four years in the following cases:**

- *United States v. Christopher Emory Cramer and Ricky Allen Fackrell*.  In the United States Federal Court in the Eastern District of Texas Beaumont Division Case No. 1:16-CR-26.
- *Durell Sims v. Julie L. Jones, Secretary of the Florida Department of Corrections*.  United States District Court for the Northern District of Florida Tallahassee Division.  Case No. 4:16-cv-49-RH-CAS.
- *State of Florida v. Scott Edward Nelson*.  Case No. 17-CF-015684-A-OR; Division 17.
- *Peter Bistrian v. Warden Troy Levi, Assistant Warden Blackman, Captain David C. Knox, J. McLaughlin, SIA, et.al. and the United States of America, Defendants*.  Civil Action No. 2:08-CV-03010-CMR United States Federal District Court for the Eastern District of Pennsylvania.

Freitag001441

JA0000215

- *DeWayne Bearchild v Larry Pasha.* Case No. 6:14-cv-00012-DLC United States District Court for the District of Montana Helena Division.

**I have testified at deposition within the proceeding four years in the following cases:**

- *Kent Richard Ellis vs. Corizon, INC., Dr. Young, N.P. Poulson, Ms. Rona Siegert, P.A. Takagi, Warden Yordy, N.P. Gelok and N.P. Shaffer.* Pending in the United States District Court for the District of Idaho. Case No. 1:15-cv-00304
- *Daniel Taylor vs. City of Chicago; Anthony Villardita #20849, Thomas Johnson #20820, Brian Killacky #20748, Terry O'Connor #20831, Rick Abreu #20796, Robert Delaney #20383, Sean Glinski #3122 and Michael Berti # 12881.* United States District Court Northern District of Illinois, Eastern Division. Case No. 1:14-cv-00737
- *Regina Shields Individually and as the Personal Representative of the Estate of Samuel Shields v. Prince George's County, Maryland, et. al.* Case No. 8:15-cv-01736-GJH pending in The United States District Court for the District of Maryland Greenbelt Civil Division
- *K. Carol Velasco-Rodas, in her Personal Capacity, and Laura Bluehorse-Swift, as Personal Representative of the Estate of Morgan P. Bluehorse vs. State of Washington, Department of Corrections; et al.* Superior Court of the State of Washington in and for the County of Spokane. Case No. 17-2-02543-1
- *Estate of Erick de Anda, by and through successor in interest Enrique de Anda Garcia; Enrique De Anda Garcia, individually vs. Raymond Herr, Taylor Fithian, Kip Hallman, Marianne Rowe, Elizabeth Falcon, Cindy Watson, Yvonne Maxfield, Jodel Jencks, California Forensic Medical Group, INC., Steve Bernal, John Mihu, James Bass, David Cooper, David Ramon, Monterey County, Monterey County Sheriff's Office, Does 1-10.* United States District Court for the Northern District of California Case No. 5:17-cv-05320-SVK
- *Jonathan Scott v County of Marion, South Carolina, A Political Subdivision of the State of South Carolina, Marion County Detention Center, Marion County Sheriff's Office, Former Sheriff Mark W. Richardson, Frank Anthony Gibbons and Southern Health Partners, INC.* United States Federal Court District of South Carolina Florence Division. Civil Action No. 1:18-CV-0047-RMG-SVH.
- *State of Florida v. Scott Edward Nelson.* Case No. 17-CF-015684-A-OR; Division 17.
- *Warren R. Harris v. Muriel E. Bowser, Tanya A. Royster, Mark J. Chastang and Quincy L. Booth.* Case No. 1:18-cv-00768-CKK pending in the United States District Court for the District of Columbia.
- *Ameka Riddick, Administrator of the Estate of Pamela Renee Riddick, The Decedent, deceased v. William Watson, Individually and as Sheriff for the City of Portsmouth, et al.* United Sates District Court for the Eastern District of Virginia Norfolk Division. Case No. 2:19-CV-00363.
- *Ruben Castillo, Plaintiff v C.O. Jeremiah Vance, The West Virginia Regional Jail Authority and The West Virginia Division of Corrections.* Pending in The Circuit Court of Kanawha County, West Virginia. Civil Action No. 16-C-187.
- *Arthur Brewington v. Don Reynolds, in his official capacity as Sheriff of Laurens County Sheriff's Office; Corporal John Przybylo; Sergeant Corey Matthew Barnes.* United States District Court District of South Carolina. Case No. 0:19-2903-DCN-PJG.
- *Leinette Kainoa Reyes; Dana K.A. Baba; Darnell K. Maluyo; Artemio Panlasigui, Individually and as a Personal Representative of the Estate of Dawnielle C. Panlasigui, deceased, and as Next Friend to A.P. a minor; Tiana M. Soto; Maelene Cruz; Monica J. Alves Peralto; Shawn l. Tallman; Reyna M. Banks; and Victoria Saunoa-Piper v. State of Hawaii; Nolan Espinda; Eric G. Tanaka; Chavon Freitas; Taofi Magalei, Jr.; Brent Baumann; Gauta Vaa; James Sinatra; John Does 1-25; Jane Does 1-25; and Does*

JA0000216

*Entities 1-25.* United States District Court for the District of Hawaii. Civil No: 1:17-cv-00143-JAO-RT.

- Nichole Morrison as Administrator for the Estate of Roberto Grant and as Mother and Legal Guardian for the Property of SG and AG, Decedents Minor Children v United States of America, Federal Bureau of Prisons, Executive Assistant Lee Plourde, Correction Officer Kern and John and Jane Doe(s) Agents and Employees of the Defendants. United States District Court Southern District of New York. Case No: 17 Civ. 6779 (WHP).
- Stacy Willis, as Personal Representative of the Estate of Mitchell Everett Willis, deceased v Oklahoma County Detention Center, et al. United States District Court Western District of Oklahoma Case No. 5:18-cv-00323-D
- James Delaney v. William Romero in his individual capacity. United States District Court for the District of Colorado. Civil Action No. 1:20-cv-2964.
- *Christine Parker, Individually and as Administrator of the Estate of Teddy Parker v Smith County Texas, City of Tyler, Texas, Raquel Rodriguez, Individually, Leonel Hernandez, Individually, Shawn Jones, Individually, Jose Iglesias, Individually, Zane Lucas, Individually, Brandon Lott, Individually and Joshua Smedley, Individually.* United States District Court Eastern District of Texas Tyler Division. Case No. 6:19-CV-00212.
- *Estate of Patrick A. Regan, by Donna Hogle, as Administrator of the Estate, and on behalf of the survivors, Donna Hogle, Robert Regan, Derek M. Regan, Riley Regan, and H.R., a minor v. John Baldwin, as Director of Corrections, WEXFORD Health Sources, INC., a Foreign Corporation, Linda Duckworth, in her individual capacity, Stephen Lanterman, in his individual capacity, Kelly Haag, in her individual capacity, Dr. Rezwan Khan, in his individual capacity, Susan Prentice, in her individual capacity, Taylor Cool, in her individual capacity, and Christian Bolte, in his individual capacity.* United States District Court District for the Central District of Illinois Peoria Division. Case No. 1:17-CV-01059-JBM-JEH.
- *Deanna Wilson v Clallam County; W.L. "Bill: Benedict, in his individual capacity; Wendy Peterson, in her individual capacity; Howard Andrew Blair, and John Does 1-5, in their individual capacities.* United States District Court Western District of Washington at Tacoma Case No. 3:19-cv-06105-RSM-TLF.
- *Adrian Deshun Delk v CoreCivic d/b/a "Hardeman County Correctional Facility," Warden Grady Perry, Danita Woods, Tomicka McKinnie, Columbus Molone, and Latoya Loudon.* United States District Court for the Western Section of Tennessee Western Division Case No. 16-1285-JDB-cgc.
- *Billie Taylor v West Virginia Division of Corrections and Rehabilitation (WV Regional Jail and Correctional Authority); and John Does, unknown employees or agents of the entity.* Circuit Court of Kanawha, West Virginia. Civil Action No. 20-C-1022. Judge Jennifer Bailey

Freitag001443

JA0000217

**Exhibit A**

Curriculum Vitae

Tim Gravette

ROY T. GRAVETTE (TIM)

126 Playfair Drive, Lafayette, Louisiana 70503 | 361-742-2500 | tim@gravetteconsulting.com

EDUCATION

Federal Law Enforcement Training Center

Glynco, Georgia

| | | |
|---|---|---|
| • | Introduction to Correctional Techniques (112 hours) | 1990 |
| • | Firearms/Self Defense (32 hours) | 1990 |
| • | Spanish Immersion for Law Enforcement Officers (141 hours) | 1992 |
| • | Training for Trainers for Side Handle Baton Instructors (26 hours) | 1994 |

Federal Law Enforcement Training Center

Artesia, New Mexico

Prisoner Transportation and Bus Transportation Training (80 hours)     1993

Federal Bureau of Prisons Management Training Center

Aurora, Colorado

| | | |
|---|---|---|
| • | New Lieutenant Training (76 hours) | 1995 |
| • | Advanced Lieutenant Training (72 hours) | 1995 |
| • | Special Investigative Supervisor Training (64 hours) | 1997 |
| • | New Captain Training (40 hours) | 1998 |
| • | CORE Skills Training (40 hours) | 1998 |
| • | Discipline Hearing Officer Training (52 hours) | 1998 |
| • | New Associate Warden Training (36 hours) | 2001 |
| • | Public Speaking and Media Relations (36 hours) | 2002 |
| • | National Incident Management Training (36 hours) | 2007 |

Freitag001444

JA0000218

Miami-Dade Community College
Miami, Florida
Arson and Crime Scene Photography/Documenting Domestic Violence          1995


National Crisis Prevention Institute
Milwaukee, Wisconsin
Instructor Certification          1996
Federal Bureau of Prisons Employee Development Center
Washington, D.C.
Leadership Forum (40 hours)          1997


National Institute of Corrections
Longmont, Colorado
Correctional Leadership Development          2003
Management Development Center
Denver, Colorado
Strategic Leadership: Leading Culture Change and Building Performance Based Organizations
          2005


Offices of the United States Attorneys
The National Advocacy Center
Columbia, South Carolina
Prison Rape Elimination Act Certification Training          2013


De-Escalation – What Does This Mean?
Use of Force Policy Development and Training Standards
Webinar Daigle Law Group Eric P. Daigle          2018


OTHER TRAINING


- Safety Cross Development Course          1991
- Annual Correctional Refresher Training          1991-2010
- Correctional Services Cross Development Course          1992
- Computer Security          1992

Freitag001445

JA0000219

| | | |
|---|---|---|
| • | Hostage Survival Skills | 1993 |
| • | Stun Munitions | 1993 |
| • | Case Management | 1998 |
| • | Financial Management | 1999 |
| • | Religious Services Cross Development | 2000 |
| • | Suicide Assessment and Management | 2001 |
| • | Employee Services Cross Development Course | 2002 |
| • | Psychology Services Cross Development Course | 2002 |
| • | Human Resource Cross Development Course | 2002 |
| • | Labor Management | 2002 |
| • | FEMA Emergency Management Training | 2007 |
| • | Prison Rape Elimination Act Auditor Training | 2014 |

AWARDS

| | |
|---|---|
| Norman A. Carlson Award | 2000 |
| Supervisor of the Year | 2000 |
| Excellence in Operational and Program Review | 2000 |

Specialized Experience

Disturbance Control Squad Member

Disturbance Control Squad Leader

Special Operations Response Team Member

Special Operations Response Team Leader

Special Operations Response Team Commander

TEACHING EXPERIENCE

Federal Bureau of Prisons

Instructor for General Classes                                        1993-2009

Instructor for the following classes during annual training sessions: Terrorism both Domestic and Foreign, First Responder, Key Control, Security Procedures and Report Writing.

Freitag001446

JA0000220

Instructor PR-24 Side Handle Baton                                    1994-1995

Conducted training classes and certified correctional staff in the proper use of a side handle baton and use of force techniques.


Instructor Nonviolent Crisis Intervention                             1995-1996

Conducted training for staff in the standards for crisis prevention and intervention training.  This training provided staff with the skills to safely and effectively respond to anxious, hostile, or violent behavior while balancing the responsibilities of care.


Instructor Use of Deadly Force                                        1998-2001

Conducted training for all institution staff in the use of deadly force.


Instructor Ethics                                                     2002-2009

Conducted training for all staff during annual training sessions in policies related to ethical behavior both in the workplace and outside activities.


RELATED EXPERIENCE

Litigation Consultant

Gravette Consulting LLC                                               2010 - Present

As a Litigation Consultant, I provide litigation support and expert witness testimony.  I have the responsibility to review and analyze case materials to include written reports, video footage and if available recorded phone conversations.  I assist the attorney client with deposition and trial preparation focusing on discovery and evidence.  I prepare a written report of opinions I have formulated from research and materials provided for each case.  Inmate standards of care and conditions of confinement are a central focus point of my work and preparation.


I have been involved in cases on the Federal, State, Parish, and County levels.  My years of experience as a correctional professional has led to cases ranging from homicides, suicides, assault, and death in custody.  I have prepared Federal Rule 26 reports and provided deposition testimony.   I have provided expert testimony in Federal Court and have been qualified in the following areas: prison culture, Bureau of Prisons policy, prison homicide and investigations, prison staffing and policy, inmate behavior and comparative disciplinary records.  Attention to the details of each case and interpretation of policy is utilized as the basis for my opinions.

Freitag001447

JA0000221

Subject Matter Expert

Creative Corrections                                                                    2012 - 2014

I was employed as a Subject Matter Expert in the field of corrections for Creative Corrections in Beaumont, Texas. I conducted Office of Detention and Oversight (ODO) audits for the United States Immigration and Customs Enforcement Office of Professional Responsibility. I was involved in four to five audits per year during my tenure with Creative Corrections. I would go with a team of other subject matter experts and review a facility's overall operation and physical plant layout. The audits were completed utilizing Performance Based National Detention Standards. Of the areas I have been assigned during the audits, I have reviewed and documented facilities' compliance in Use of Force and Restraints, Special Management Units, Food Service Operations, Classification System, Staff-Detainee Communication, and Sexual Abuse and Assault Prevention and Intervention.


Contract Special Investigator

KeyPoint Government Solutions                                                          2011 – 2014

As a contract special investigator, I conducted background investigations in support of national security, focusing on casework for the Office of Personnel Management (OPM). My primary duties included conducting background investigations for determining employment suitability of persons who require access to sensitive or classified U.S. Government information. I conducted face-to-face interviews with the subjects and his/her neighbors, employers, friends, and family. I also performed records searches at law enforcement agencies, courthouses, educational institutions, financial institutions, and medical/mental health facilities. Following the interviews and records searches, I provided written reports to the Office of Personnel Management which were used for official purposes.


Prison Rape Elimination Act Auditor                                                    2015-2018

I am a certified Prison Rape Elimination Act (PREA) Auditor for Adult Facilities by the United States Department of Justice. I completed a one-week intensive certification class at the National Advocacy Center in Columbia, South Carolina. I am available to assist with the certification process and complete the required audit process for Adult Facilities as directed by the PREA Resource Center utilizing the standards and guidelines required to meet the standards and laws of the Department of Justice.


Motion Picture Industry Consultant                                                     2015

I consulted on production of the motion picture Trumbo, filmed in New Orleans, Louisiana. The film was directed by Jay Roach and starred Brian Cranston, John Goodman, Helen Mirren, and Diane Lane. The film was nominated for an Oscar and other prestigious awards. I assisted the production personnel

Freitag001448

JA0000222

with costumes and prison dialog. I also wrote the scene in the movie of the searching of Trumbo when he was processed into the prison. I was on location during the filming to assist with prison related scenes and to help with the actions of the extras involved in the prison scenes.

Federal Bureau of Prisons                                                                 1990 – 2010

During my career with the Federal Bureau of Prisons, I served as a correctional officer, a GS-9 lieutenant, a GS-11 lieutenant, a GS-12 captain, a GS-13 captain, and an associate warden. My assignments have been at eight different locations at varying security levels including administrative facilities, four medium security facilities, federal detention centers, and two high security facilities in locations across the southern United States. My primary duties dealt with the safety, security, and orderly running of the institutions which included the oversight of internal audits and preparation for program review visits, American Correctional Association visits and institution character profile visits. My association with the American Correctional Association has been on six different occasions. I have participated in program review visits as an auditor and have accompanied my regional director on two occasions on institution character profile visits. I have been involved in numerous incidents of inmate violent behavior and emergency situations over the span of my career. I have been the on-scene commander for inmate disturbances and riots and have responded to medical emergencies and acts of violence ranging from assaults to homicides. I have been a member of after-action review teams and participated in mortality reviews.

Correctional officer at a medium security institution from 1990-1993.

GS-9 and GS-11 lieutenant at two administrative facilities from 1993-1995.

GS-11 lieutenant at a medium security facility from 1995-1997.

GS-12 captain at an administrative facility from 1997-1999.

GS-13 captain at a high security institution from 1999-2001.

I was assigned as an associate warden at three facilities from 2001-2010. During these assignments, I was responsible for several areas of the institutions and the program and operational reviews for those departments. I completed the yearly reviews of our local policy and continued to monitor changes in national policy as it affected the changes we needed to make to our local policy. I was tasked with being the re-accreditation manager for our American Correctional Association visits at two of the assignments. I utilized my experience and knowledge of national and local policy as well as the mandatory standards for correctional institutions as set forth by the American Correctional Association to prepare our facilities for the visits. Along with a team of staff I made numerous inspections and walk-thru visits of

Freitag001449

JA0000223

all the areas of the institution.  I noted areas of concern and made on-the-spot corrections.  I was selected to participate in an institution character profile review at another institution by my regional director.  This process is similar to a program review, which involves touring the entire facility and noting issues which are to be included in the final report.   I have also been utilized as an investigator over the course of my career.  I have been involved in investigations of staff misconduct and criminal investigations ranging from assault to homicides.  I have attended training in Denver, Colorado for investigation and crime scene management.  I have worked with other agencies to include the Federal Bureau of Investigations, the United States Marshals Service, and the Office of Inspector General in criminal investigations of both staff and inmates.  I also conducted investigations for the Federal Bureau of Prisons working closely with the Office of Internal Affairs.

SPEAKING ENGAGEMENTS

I have made public speaking appearances which included the 16th annual Criminal Justice Act Panel Training and Seminar hosted by the Federal Public Defenders Office in Lafayette, Louisiana, and the Lafayette Bar Association CLE program.  My topic was The Prison Investigative Process and Your Client.  The presentation included insights into prison culture and inmate behavior, the investigative process in a correctional setting, and inmate classification issues which include protective custody, high profile inmates, and the influence of prison gangs on the day-to-day operation of a prison.

MEMBERSHIPS

American Correctional Association

Louisiana Sheriffs' Honorary Membership Program

Louisiana Correctional Association

Freitag001450

JA0000224

## Exhibit B
## Materials Reviewed

1. Complaint filed 01/315/2020
2. Bucks County Incident Report David P. Hanks dated 11/19/2018
3. Exhibit 25 Photograph Sink in Cell with Coffee Cups
4. Exhibit 11 Special Investigation Unit Incident Report Investigator Daniel Onisick dated 0825/2018 (AGBCC-0004-0008)
5. Exhibit 12 Special Investigation Unit Supplemental Report Investigator Disandro dated 08/25/2018 (AGBCC-0193)
6. Exhibit 13 Special Investigation Unit Supplemental Report Investigator Frank Bochenek dated 08/28/2018 (AGBCC-0196)
7. Exhibit 10 Memorandum From: Frank Bochenek To: Director Chris Pirolli dated 10/24/2019 (AGBCC-0418)
8. Exhibit 2 Bucks County Suicide Prevention Program dated 08/29/2019 (AGBCC-0427-0432)
9. Exhibit 6 Bucks County Watch and Observation Officer dated 03/28/2017 (AGBCC-0421-0422)
10. Exhibit 7 Bucks County Watch and Observation Procedures (AGBCC-0449-0455)
11. Module 5 Activity Logs 08/24/2018-08/25/2018 (AGBCC-0099-0101)
12. Inmate Regular Monitor Form dated 08/24/2018 (AGBCC-0186-0187)
13. Bravo Module Video Footage 08/25/2018
14. Internet Search Bucks County Correctional facility
15. Exhibit 14 Memorandum Officer J. Young dated 08/25/2018 (AGBCC-0114)
16. Exhibit 15 Memorandum Officer R. Moody dated 08/25/2018 (AGBCC-0115)
17. Exhibit 1 Post Sentence Email Thread 08/23/2018 to 08/24/2018 (AGBCC-0126-0127)
18. Exhibit 3 Case Notes (AGBCC-0351-0352)
19. Exhibit 4 Offender Management System Print-Out Freitag (AGBCC-0444)
20. Exhibit 8 Bucks County SOP Treatment Services dated 01/01/2018 (AGBCC-0437-0439)
21. Exhibit 16 Prime Care Mortality Review dated 09/12/2018 (PCM1666-1673)
22. Exhibit 19 PrimeCare Annual Report 2018 dated 01/10/2019 (PCM0865-0870)
23. Exhibit 20 Job Descriptions Mental Health Staff dated 01/31/2017 (PCM1277-1284)
24. Exhibit 22 Prime Care Suicide Prevention Program dated 05/01/2018 (PCM0349-0360)
25. Exhibit 23 Medical Records Charles Freitag (PCM0001-0305)
26. Exhibit 24 Email Dr. Cassidy dated 08/01/2018 (PCM1674)
27. Statement Hugh Caldwell (Inmate Monitor) dated 02/17/2021 (Freitag1388-1389)
28. Exhibit 29 Bucks County Detectives Incident Report dated 11/19/2018
29. Deposition James Nottingham dated 05/05/2021
30. Deposition James Young dated 12/23/2020
31. Deposition Robert Moody dated 12/23/2020
32. Deposition Troy Murphy dated 03/25/2021
33. Deposition Clifton Mitchell dated 03/25/2021
34. Deposition Frank Bochenek dated 05/05/2021
35. Deposition Christina Penge dated 01/27/2021
36. Deposition Jessica Mahoney dated 01/29/2021
37. Deposition Carl Metellus dated 12/22/2020
38. Deposition Daniel Onisick dated 12/22/2020

Freitag001451

JA0000225