**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHARLES JOSEPH FREITAG, Jr., as ADMINISTRATOR of the ESTATE OF CHARLES JOSEPH FREITAG, SR.,**<br><br>                                **Plaintiff,**<br>           **vs.**<br><br>**COUNTY OF BUCKS, et al.**<br><br>                              **Defendants.** | **CIVIL ACTION**<br><br>**NO.  2:19-cv-05750** |

**DEFENDANTS COUNTY OF BUCKS AND CORRECTIONAL OFFICERS MOODY,
MURPHY, AND YOUNG'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

Jeffrey M. Scott
jscott@archerlaw.com
Alexis M. Way
away@archerlaw.com
Kerri E. Chewning, Esquire
kchewning@archerlaw.com
Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103-7393
(215) 963-3300
(215) 963-9999
Counsel for Defendants County of
Bucks, Moody, Murphy, and Young

# TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................................2

II.  PROCEDURAL HISTORY.....................................................................................4

III. CLAIMS AND JURISDICTION............................................................................4

IV.  SUMMARY JUDGMENT STANDARD ...............................................................5

V.   ARGUMENT ..........................................................................................................5

   A.  Legal Standard Under the Eighth Amendment................................................5

   B.  Defendants Moody, Murphy, And Young Are Entitled To Summary Judgment
      Under The Qualified Immunity Doctrine Because The Right At Stake Was Not
      Clearly Established. ..........................................................................................7

   C.  The Individual Defendants Did Not Violate Freitag's Eighth Amendment Rights
      And Are Entitled To Judgment As A Matter Of Law.........................................9

      1.  There Is No Evidence That Freitag Had A Strong Likelihood of Attempting
         Suicide on August 25th. ...........................................................................9

      2.  The Defendant Officers Had No Knowledge of Freitag's Particular
         Vulnerability To Strong Likelihood of Attempting Suicide. .....................10

      3.  The Defendant Officers Were Not Deliberately Indifferent to Freitag's
         Vulnerability to A Strong Likelihood of Attempting Suicide. ...................11

   D.  Plaintiff's Municipal Liability Claim Must Be Dismissed ................................12

      1.  Bucks County's Policies And Procedures Are Not Unconstitutional..........13

      2.  There Is No Evidence That A County Policymaker Was Deliberately
         Indifferent To a Need For More or Better Training In The Area of Suicide
         Prevention. ................................................................................................15

   E.  Bucks County Did Not Violate Title II of the ADA........................................18

VI.  CONCLUSION.....................................................................................................20

Defendants County of Bucks and Correctional Officers Moody, Murphy, and Young, hereby file this Memorandum of Law in Support of their Motion for Summary Judgment.

## I.   INTRODUCTION

On September 13, 2017, Charles Joseph Freitag ("Freitag") intentionally drove a motor vehicle through his former wife's home. (Statement of Undisputed Material Facts ("SUMF") ¶ 1). Freitag was arrested and charged with aggravated assault. (SUMF ¶ 2). After arraignment, Freitag remained free until his trial which commenced on June 4, 2018, where Freitag was found guilty of aggravated assault.[1] (SUMF ¶¶ 3-4). The trial court committed Freitag to the custody of the Bucks County Correctional Facility ("BCCF") pending sentencing. (SUMF ¶ 4).

Freitag was provided medical and mental health treatment by PrimeCare Medical, Inc. ("PCM"), the County's contracted medical provider. Freitag was medically followed by PCM during his entire incarceration. (SUMF ¶¶ 5-28). On July 31, 2018, Deputy Warden Mitchell was alerted by Freitag's attorney that Freitag was not doing well and had a history of suicide attempts. (SUMF ¶ 21). Deputy Warden Mitchell then contacted PCM and medical professionals who completed an evaluation of Freitag. (SUMF ¶ 22). PCM placed Freitag on a Level 3 Medical Watch and he was systematically evaluated for mental health concerns and to monitor his behaviors.[2] (SUMF ¶¶ 23-27).

On August 17, 2018, PCM medically determined that Freitag was not at-risk for self-harm and removed him from the watch protocol. (SUMF ¶ 26). Freitag was evaluated by PCM on August 22 and August 23, 2018. Freitag denied any mental health concerns and suicidal

---

[1] At the time of his conviction, Freitag was 57 years of age. (Ex. 1, JA0000004, Am. Compl. ¶ 13).

[2] A Level 3 Medical Watch requires the assigned correctional officer(s) to observe Freitag every thirty minutes during each tour of duty. (SUMF ¶ 15).

ideation on both visits, and the mental health care employees noted that he appeared low risk for self-harm. (SUMF ¶ 27).

On August 24, 2018, Freitag was sentenced to six to twelve years imprisonment in the Pennsylvania Department of Corrections. (SUMF ¶ 29). Freitag was transported back to BCCF to await transport to a state facility. When Freitag returned from sentencing, he did not express any suicidal ideations or self-harm to any BCCF employee, or to his brother, whom he spoke to after returning to BCCF. (SUMF ¶ 36). Even though Freitag did not exhibit signs of self-harm, or express any suicidal ideations, Deputy Warden Mitchell placed Freitag on a Medical Watch, Level 3. (SUMF ¶¶ 30-35). Freitag was scheduled for a medical appointment on August 27, 2018.  (SUMF ¶ 28). Freitag returned to his assigned cell B-3 on B Module. (SUMF ¶ 38).

On August 25, 2018, Freitag exited his cell at 9:11 a.m. for medication. Freitag received his medication at 9:16 and returned to his cell. (SUMF ¶ 49). There is no evidence that Freitag alerted any nurse or County employee that he was contemplating self-harm at the time he was provided his prescribed medication by PCM. At 10:04 a.m., Officer Murphy observed Freitag in his cell. (SUMF ¶ 51). At 10:21 a.m., Officer Murphy observed Freitag in his cell.  Officer Murphy did not observe Freitag attempting to harm himself on either of his observations. (SUMF ¶ 52). At 10:32 a.m., inmate worker Caldwell also looked into Freitag's cell and did not alert anyone of anything unusual regarding Freitag. (SUMF ¶ 53). Officer Murphy exited Module B at 10:40 a.m. (SUMF ¶ 54). Pursuant to BCCF Policy, the next thirty-minute round would have occurred by10:51 a.m.  (SUMF ¶ 15).

At some point, and this fact remains unknown, Freitag fashioned an implement from a plastic cup. (SUMF ¶ 58). At 10:55 a.m., another inmate was walking by Freitag's cell, looked in, and saw Freitag bleeding on the bed. The inmate called to Officers Moody and Young for

assistance. Officer Moody went over to Freitag's cell, called into Freitag, and received no

response. Officer Moody told Officer Young to call a medical emergency. (SUMF ¶¶ 55-56).

Freitag committed suicide by cutting his arms with a piece of plastic. (SUMF ¶¶ 58-59, 61).

## II.    PROCEDURAL HISTORY

This civil action was commenced on December 6, 2019 by Plaintiff Charles Joseph

Freitag, Jr. on behalf of Freitag. (ECF No. 1). Plaintiff filed an Amended Complaint on January

31, 2020 naming Correctional Officers Moody, Murphy, and Young as Defendants. (ECF No.

16, 21).  This matter is now ripe for adjudication and this motion for summary judgment being

filed in accordance with the Court's Amended Scheduling Order of April 8, 2022.  (ECF No. 76).

## III.   CLAIMS AND JURISDICTION

The Estate of Charles Freitag ("Plaintiff") brings a cause of action against the named

County Defendants under 42 U.S.C. § 1983, alleging a violation of Freitag's Eighth Amendment

rights. Plaintiff also brings a claim against the County under the American with Disabilities Act.

(JA0000020, ¶¶ 126-28). Plaintiff further alleges that the County violated Title II of the

Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"). (*Id.* ¶ 128).  Plaintiff brings a

cause of action against PCM, the County's accredited medical provider, and individually named

PCM mental health care employees, alleging violations of Freitag's constitutional rights and

negligence under Pennsylvania law.[3] (*Id.* ¶¶ 126-27, 129-32). The Court has jurisdiction over the

federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law

claim. *See* 28 U.S.C. § 1367.

---

[3]    As Freitag's medical condition was diagnosed and treated by PCM medical providers, for
purposes of summary judgment only, Freitag had a serious medical need. *Navolio v.
Lawrence Cty.*, 406 F. App'x 619, 622 (3d Cir. 2011). This is not an admission that any of the
individual County Defendants were aware that Freitag had any suicidal ideations or exhibited
signs of suicidal ideations, ignored those signs, or prevented Freitag from getting medical
treatment, on August 25, 2018.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

## IV.     SUMMARY JUDGMENT STANDARD

Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Daubert v. NRA Group, LLC,* 861 F.3d 382, 388 (3d Cir. 2017). Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The nonmoving party, at the summary judgment stage, must point to evidence that would be admissible at trial and thus "reduc[ible] to admissible evidence." *Williams v. Borough of West Chester,* 891 F.2d 458, 466 n.12 (3d Cir.1989). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  *Celotex,* 477 U.S. at 322.

## V.     ARGUMENT

### A.     Legal Standard Under the Eighth Amendment

For liability under § 1983, Plaintiff "must establish (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). "To impose liability under § 1983, a plaintiff must establish with particularity that the named defendant was directly and personally involved in the deprivation of plaintiff's rights." *Payton v. Vaughn*, 798 F. Supp. 258, 260 (E.D. Pa. 1992) (*citing Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1988)). The plaintiff must show actual participation or actual knowledge and acquiescence in the unlawful conduct. *Id.*

To succeed on an Eighth Amendment claim for deliberate indifference resulting in suicide, a plaintiff must establish:

> (1) the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted; (2) the prison official knew or should have known of the individual's particular vulnerability; and (3) the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

*Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017).

"The requirement of a 'particular vulnerability to suicide' speaks to the degree of risk inherent in the detainee's condition . . . . [and] implies that there must be a 'strong likelihood, rather than a mere possibility,' that self-inflicted harm will occur." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991) ("*Colburn II*") (internal citations omitted). "A particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." *Palakovic*, 854 F.3d at 230.

"Even where a strong likelihood exists, the plaintiff must establish that the custodial officials 'knew or should have known' of that strong likelihood." *Colburn II*, 946 F.2d at 1024. For the knowledge prong, it is not necessary that a prison official have "a subjective appreciation of the detainee's particular vulnerability." *Palakovic*, 854 F.3d at 231. Rather, knowledge of a particular vulnerability to suicide has been found where custodial officials "have had actual knowledge of an obviously suicidal threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Id.* at 222-23 (quoting *Colburn II*, 946 F.2d at 1025

n.1).  With regard to the "should have known" aspect of the second prong, the Third Circuit has

explained, it:

> does not refer to a failure to note a risk that would be perceived with
> the use of ordinary prudence.  It connotes something more than a
> negligent failure to appreciate the risk of suicide presented by a
> particular [inmate], though something less than subjective
> appreciation of that risk.  The strong likelihood of suicide must be
> so obvious that a lay person would easily recognize the necessity for
> preventative action; the risk of self-inflicted injury must not only be
> great, but also sufficiently apparent that a lay custodian's failure to
> appreciate it evidences an absence of any concern for the welfare of
> his or her discharges.

*Woloszyn*, 396 F.3d at 320 (citing *Colburn II*, 946 F.2d at 1025).

The Third Circuit has noted that the third prong of the particular vulnerability to suicide

analysis "recognizes that there must be a link between the prison official's knowledge and his

disregard of the prisoner's particular risk." *Vargo v. Plum Borough*, 376 F. App'x 212, 216 (3d

Cir. 2010).  Deliberate indifference to a particular vulnerability to suicide requires the plaintiff

prove that the defendant "knows of and disregards an excessive risk to inmate health and safety."

*Woloszyn*, 396 F.3d at 325 (*citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Additionally,

> a non-medical prison official cannot be charge[d] with the Eighth
> Amendment scienter requirement of deliberate indifference when
> the prisoner is under the care of medical experts" and the official
> does not have "a reason to believe (or actual knowledge) that prison
> doctors or their assistants are mistreating (or not treating) a prisoner.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Plaintiff concedes that Freitag was under the

under the care of medical experts and brought claims against the medical defendants.

**B.**   **Defendants Moody, Murphy, And Young Are Entitled To Summary
Judgment Under The Qualified Immunity Doctrine Because The Right At
Stake Was Not Clearly Established.**

The doctrine of qualified immunity protects government officials "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In evaluating whether qualified immunity applies, "courts employ a two-pronged analysis to determine: (1) 'whether the facts that [the] plaintiff has alleged . . . make out a violation of a constitutional right,' and (2) 'whether the right at issue was "clearly established" at the time of [the] defendant's alleged misconduct.'" *Kendra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017) (quoting *Pearson*, 555 U.S. at 232).

A right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Montanez v. Thompson*, 603 F.3d 243, 251-52 (3d Cir. 2010) (citations omitted).

To determine if a right is clearly established, this Court first looks to Supreme Court precedent. *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017). If there is none, this Court may rely on a " 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Id.* (quoting *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)). The Supreme Court has emphasized that courts "must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). Thus, what is to be deemed "clearly established law" cannot be defined at some high level of generality." *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011). Accordingly, when applying the qualified immunity analysis, this Court must frame the right at issue "in a more particularized, and hence more relevant sense in light of the case's specific context, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

Plaintiff alleges that the individual County defendants "are aware of the specific factors that make a prisoner a risk to attempt suicide;" "are aware that the likelihood of a suicide attempt for a prisoner is exceptionally high in the immediate aftermath of . . . the imposition of a sentence;" and "are aware of several recognized methods to mitigate the risk of suicide for a prisoner . . . including . . . placement of the prisoner on a suicide watch." (JA000006-7, Am. Compl. ¶¶ 27-29). However, such generalized awareness is insufficient to establish knowledge of a specific individual's particular vulnerability to suicide. *See Wargo v. Schuylkill Cty*, 348 F. App'x 756, 759 (3d Cir. 2009) ("It is not enough to show that the [inmate] fits within a category of persons who may be more likely to commit suicide. Instead, [the plaintiff] has the burden of demonstrating that [the decedent] had a particular vulnerability to suicide.").

Plaintiff cannot point to a robust consensus of cases that would have placed a correctional officer on notice that, absent direct knowledge of an inmate's particular vulnerability to suicide, when the medical experts removed Freitag from medical watch on August 17, 2018, and when no individual Defendant had any information that Freitag expressed suicidal thoughts (verbally or otherwise) on August 25, 2018. As such, Officers Murphy, Young and Moody are entitled to judgment under the qualified immunity doctrine.

### C.   The Individual Defendants Did Not Violate Freitag's Eighth Amendment Rights And Are Entitled To Judgment As A Matter Of Law.

#### 1.   There Is No Evidence That Freitag Had A Strong Likelihood of Attempting Suicide on August 25th.

In all ten visits Freitag had with PCM mental health personnel in August 2018, he denied suicidal ideation. (SUMF ¶¶ 24, 27). Additionally, PCM placed Freitag on a Regular Medical Watch on July 31, 2018 after being notified by Deputy Warden Mitchell of a concern raised by Freitag's attorney. Deputy Warden Mitchell's actions were the opposite of deliberate indifference. (SUMF ¶¶ 21-23). Freitag consistently denied suicidal ideations from July 31st

through August 17th at each of his mental health appointments.  PCM, in its medical judgment, removed Freitag from any medical watch. (SUMF ¶¶24-26). Further, although Freitag's medical records show he was anxious or nervous about his sentencing, such nervousness does not indicate a strong likelihood of suicide, rather than a mere possibility. *See, e.g., Wolosyzn*, 396 F.3d at 317 (despite witness who testified that inmate had been remorseful and distant, and had discussed recent drug and alcohol binges, such statements, without more do not show a strong likelihood, rather than a mere possibility, of self-inflicted harm); *Alexander v. Monroe Cty*, 734 F. App'x 801, 804-05 (3d Cir. 2018) (where prison doctor evaluated previously suicidal inmate, finding that although inmate expressed feeling anxious and paranoid, there was no longer suicidal ideation, and reduced level of suicide watch).

Based on the totality of the undisputed facts, no reasonable jury could conclude that there was a "strong likelihood" that self-inflicted harm would occur. Thus, the undisputed evidence demonstrates that Freitag did not have a particular vulnerability to suicide.

2.     The Defendant Officers Had No Knowledge of Freitag's Particular Vulnerability To Strong Likelihood of Attempting Suicide.

There is no evidence that if a strong likelihood of suicide existed, Defendants Moody, Murphy, and Young "knew or should have known" of it. Officers Moody, Murphy, and Young did not have Freitag's medical records or the notes from the mental health personnel. They also did not know of Freitag's mental health diagnosis, his two prior suicide attempts, or the underlying circumstances that led to his arrest, conviction, and sentence. (SUMF ¶¶ 44-45).

What Officers Moody, Murphy, and Young did know, as of August 25, 2018, was that Freitag was housed in B Module, a general population unit, not a mental health unit. (SUMF ¶ 37). They also knew that Freitag was on a regular medical Level 3 watch, which is not a suicide watch. (SUMF ¶ 15). Put simply, the Officers did not have any information that would have

10

provided them with subjective knowledge of Freitag's suicidal ideation nor was there any obvious evidence of same within their knowledge. Thus, Plaintiff cannot establish the second prong of a deliberate indifference to a particular vulnerability to suicide claim.

3. The Defendant Officers Were Not Deliberately Indifferent to Freitag's Vulnerability to A Strong Likelihood of Attempting Suicide.

Plaintiff must establish that Officers Moody, Murphy, and Young acted with deliberate indifference to Freitag's particular vulnerability, meaning that there was a "strong likelihood, rather than a mere possibility," that Freitag would attempt suicide. *Palakovic*, 854 F.3d at 223-24. The Defendant Officers had no knowledge that there was a strong likelihood that Freitag would attempt suicide. "There must be a link between the prison official's knowledge and his disregard of the prisoner's particular risk." *Vargo*, 376 F. App'x at 216; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Here, no such link exists and to hold otherwise would make any correctional officer the guarantor of an inmate's safety. *Palakovic*, 854 F.3d at 222 (noting that it would be "inappropriate" to "place custodial officials in a position in which they must guarantee that an inmate will not commit suicide").

Plaintiff's do not allege that any of the individual Defendant Correctional Officers Murphy, Moody or Young were aware that Freitag was exhibiting behaviors of self-harm or had suicidal ideations, on the morning of August 25, 2018. Instead, Plaintiff's whole claim is based on speculation. Plaintiff alleges that "had the observations [tours] been conducted at 10:45 am (inmate monitor) and before 10:51 am (correctional officer) it is likely Freitag would have been discovered cutting himself and life saving measures would have started sooner." (Plaintiff's Expert Report of Timothy Gravette, JA0000208, attached as Exhibit 25).

11

At most, Plaintiff's claim is based on a failure of the Defendant Officers Young and Moody to conduct a thirty (30) minute tour as set forth in the County's policies and procedures. A violation of a policy, standing alone, does not give rise to liability under the Eighth Amendment, nor does it violate a clearly established constitutional right. *Phillips v. Kerestes,* No. 17-1591, 2019 WL 3948780, at *7 (M.D. Pa. Aug. 20, 2019); *Bracey v. Pa. Dep't of Corr.,* 571 F. App'x 75, 79 (3d Cir. 2014) ("Contrary to his allegations, however, a violation of prison policy is insufficient by itself to support an argument for deliberate indifference…).

The undisputed evidence, as set forth herein, demonstrates that no individual Defendant corrections officer was deliberately indifferent to Freitag's particular vulnerability to suicide. The evidence is clear that Freitag was observed by an officer at 10:04 a.m., 10:21 a.m., and by an inmate worker at 10:32 a.m. (SUMF ¶¶ 51-53). A failure of an officer to conduct a tour on or before 10:51 a.m., may have violated the County policy.  A violation of a policy does not give rise to a claim of deliberate indifference under the Eight Amendment. See *Bracey,* 571 F. App'x at 79 (a violation of prison policy is insufficient by itself to support an argument for deliberate indifference). There is nothing in the record to suggest that Officers Moody, Murphy, and Young were aware that Freitag had a strong likelihood of attempting suicide on August 25th.  Thus, summary judgment should be granted in favor of Defendant Officers.

Because no individual County Defendant violated Freitag's clearly established constitutional rights, the *Monell* claim asserted against the County of Bucks must be dismissed with prejudice. Similarly, the undisputed evidence demonstrates the County did not violate Freitag's rights under the ADA.

### D.    Plaintiff's Municipal Liability Claim Must Be Dismissed

Plaintiff alleges the County acted "with deliberate indifference, failed to establish policies practices, and procedures and/or have failed to properly train, supervise and discipline their

employees regarding the protection of suicidal prisoners." (JA0000020, Am. Compl. ¶ 127).

There is no evidence that any municipal policy was the moving force behind the alleged

deprivation nor is there any evidence that the County did not properly train its officers. As such,

the claim against the County should be dismissed with prejudice. *Bd. of Cty Comm'rs of Bryan*

*Cty, Okl v. Brown*, 520 U.S. 397, 405 (1997).

       1.   Bucks County's Policies And Procedures Are Not Unconstitutional.

To defeat summary judgment, Plaintiff must prove that 'a [local] government's policy or

custom . . . inflict[ed] the injury' in question." *Estate of Roman v. City of Newark*, 914 F.3d 789,

798 (3d Cir. 2019) (quoting *Monell*, 436 U.S. at 694).  "Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action issues an

official proclamation, policy, or edict." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d

1469, 1480 (3d Cir. 1990) (alteration in original)). "A showing of simple or even heightened

negligence will not suffice." *Brown*, 520 U.S. at 407. "Custom, on the other hand, can be proven

by showing that a given course of conduct, although not specifically endorsed or authorized by

law is so well-settled and permanent as virtually to constitute law." *Roman*, 914 F.3d at 798.

When the policy or custom does not facially violate constitutional rights, a plaintiff "must

demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or

obvious consequences." *Brown*, 520 U.S. at 407.

At the outset, it should be noted that because no state actor violated Freitag's Eighth

Amendment rights, the direct claim against the County fails as a matter of law. *City of Los*

*Angeles v. Heller*, 475 U.S. 796, 799 (1986) (the Supreme Court has determined that a finding of

a constitutional violation is a prerequisite to finding municipal liability); *Grazier ex rel. White v.*

*City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003). It is "well-settled that, if there is no

violation in the first place, there can be no derivative municipal claim," *Mullholland v. Gov't Cty*

*of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). Accordingly, Plaintiff's municipal liability claim must be dismissed.

Further, Plaintiff's municipal liability claim fails for other reasons.  For example, Plaintiff failed to identify a decision-maker possessing final authority who acted with deliberate indifference to an alleged pattern of unconstitutional conduct "but either deliberately chose not to pursue [certain] alternatives or acquiesced in a long-standing policy or custom of inaction in this regard." *Simmons v. Philadelphia*, 947 F.2d 1042, 1060-62 (3d Cir. 1991). The failure to identify a decision-maker possessing final authority who acted with deliberate indifference is fatal to Plaintiff's municipal liability claim.

Additionally, it is undisputed that the County is not deliberately indifferent to inmates with a particular vulnerability to suicide. All inmates are medically screened and provided mental health services by PCM physicians, nurses, and counselors. When appropriate, PCM counselors will place inmates who are suicidal or require further observation under designated levels of supervision.  (SUMF ¶¶ 6, 16). Here, during the relevant time period, Freitag was placed on Level 3 Medical Watch by PCM. (SUMF ¶¶ 23, 35). On a level 3 watch, the County policy requires corrections officers to conduct and document tours, and observe inmates during their shift in staggered intervals not to exceed thirty minutes. (SUMF ¶ 15).

In conjunction with the officer tours, the County uses inmate monitors as a supplement (additional set of eyes) to observe inmates on watch status. (SUMF ¶ 80). On a level 3 watch, inmate monitors are required to observe the inmates on watch status every fifteen minutes and record those observations on the inmate monitors forms.  (SUMF ¶ 15). The evidence demonstrates that the inmate monitors are used to supplement, not supplant, the 30-minute tours. (SUMF ¶ 15; Letter from PrimeCare dated, October 27, 2016 at JA0000121-22 ("inmate

monitors are used as supplementary help with watches")). Having an inmate monitor as a second set of eyes, between the 30-minite rounds, does not equate to deliberate indifference. The use of an inmate worker is just as likely to prevent a death or bad outcome. Such a policy is the antitheses of deliberate indifference.

Plaintiff has no proof that the County's policy is unconstitutional on its face or that this policy was enacted with deliberate indifference to the rights of inmates.  As such, Plaintiff's municipal policy claim fails as a matter of law.

> 2.     There Is No Evidence That A County Policymaker Was Deliberately Indifferent To a Need For More or Better Training In The Area of Suicide Prevention.

"Municipal liability can be predicated upon a failure to train." *Woloszyn*, 396 F.3d at 324 (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). "However, a municipality is only liable for failing to train when that failure amounts to deliberate indifference to the [constitutional] rights of persons with whom the police come in contact." *Id.* (internal quotations omitted) (alteration in original). As the Supreme Court has explained:

> Only where a municipality's failure to train its employees in relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983 . . . .  Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such failure under § 1983.

*Woloszyn*, 396 F.3d at 324 (quoting *City of Canton*, 489 U.S. at 389) (alteration in original).

Accordingly, "not all failures or lapses in training will support liability under § 1983." *Id.* at 325. "Moreover, 'the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'"  *Id.* (quoting *Colburn II*, 946 F.2d at 1028). Thus, it is the

plaintiff's burden to prove that the deficiency in training must have actually caused the officer's indifference to medical needs. *Id.* (citing *City of Canton*, 489 U.S. at 391).

To establish municipal liability for failure to train in a prison suicide case, plaintiff must:

> (1) identify specific training not provided that could, reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives.

*Id.* (quoting *Colburn II*, 946 F.2d at 1029-30).

In *Simmons*, the plaintiff alleged that the City was deliberately indifferent in failing to train its employees about how to deal with serious medical needs of intoxicated and potentially suicidal detainees. The court found that to establish a failure to train claim, plaintiff must show the policymakers knew the number of suicides in City lockups and "deliberately chose not to provide officers with training in suicide prevention or acquiesced in a long-standing practice or custom of providing no training in this area." 947 F.2d at 1064. The court stressed that a "municipality's deliberately indifferent failure to train is <u>not</u> established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." *Id.* at 1060 (citing *City of Canton*, 489 U.S. at 1206).

Here, Plaintiff has not identified a policymaker with knowledge that there was a failure to train officers regarding inmates on a watch. Plaintiff has also not provided any evidence of any pattern of similar incidents of suicide, failure to monitor inmates on a level three watch, or failure to supervise inmate monitors that should have led to recognition that the officer training

was deficient. The only arguable evidence is that Plaintiff may have provided evidence that the Defendant Officers did not follow the applicable procedures regarding the timing of the 10:51 a.m. tour on the morning of August 25. That fact on its own is insufficient to establish municipal liability. *See Simmons*, 946 F.2d at 1060.[4]

Moreover, Plaintiff has not identified specific training that was not provided to corrections officers that could have been reasonably expected to prevent Freitag's suicide. Plaintiff's expert Dr. Perrien opines that in-person training would have resulted in higher comprehension and greater recollection of the suicide policies and procedures. (Perrien Report, JA0000235, attached as Exhibit 26). However, she does not identify a specific training, and simply opining that one type of training is better than another without more is insufficient to establish a failure to train. *See Simmons*, 946 F.2d at 1060. Similarly, Mr. Gravette, another of Plaintiff's experts, simply opines, without more, that additional training regarding timely inmate watch checks "needs to be addressed." (Gravette Report, JA0000209-10, attached as Exhibit 25). Again, this is not sufficient.

BCCF's officer training is thorough and includes courses on watch procedures. Prior to working at BCCF, officers attend the academy and receive approximate 280 hours of training. (SUMF ¶ 63). Once employed, officers received thirty-two hours of training per year which includes in-service training and refreshers from what was taught in the academy. (SUMF ¶ 64). The training is conducted in various forms, such as roleplaying, reading the policies verbatim, providing copies of the policies for the officers to take home, and hearing the experiences of Supervisors or Training Lieutenants and how they handled a particular situation. (SUMF ¶ 65).

---

[4] Inmate monitors are not state actors under § 1983. Thus, the individual correctional officers cannot be liable under a failure to supervise theory.

Additionally, BCCF received continued accreditation in May 2017 and was in compliance with NCCHC's "Standards for Health Services in Jails." (SUMF ¶ 84). The active plans of correction relating to the County's suicide prevention program and policies submitted to the NCCHC by the County and PCM demonstrate a lack of deliberate indifference toward the health and well-being of inmates. (SUMF ¶¶ 68-84). And with this extensive officer training program, it cannot be said that the County failed to train its correctional officers.

Because Plaintiff has failed to identify a specific training that was not provided, that could have reasonably prevented Freitag's suicide, combined with Plaintiff's failure to identify a policymaker, Plaintiff's municipal failure to train claim fails as a matter of law.

### E.    Bucks County Did Not Violate Title II of the ADA

Plaintiff claims the County, "with deliberate indifference, failed to ensure the use of appropriate watch protocols and the adoption of procedures to obtain mental health interventions for prisoners in its custody," thus resulting in Freitag being deprived of benefits of the County's services, programs, or activities because of his disability. (JA0000020, Am Compl. ¶ 128).

Title II of the ADA prohibits disability discrimination in the provision of public services and is applicable to state and local prisons.  42 U.S.C. § 12132; *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209-10 (1998). For a plaintiff to succeed on an ADA claim, he must establish: (1) "he is a qualified individual with a disability;" (2) he was "precluded from participating in a program, service, or activity, or otherwise was subject to discrimination;" (3) because of his disability.  *Furgess v. Pa. Dep't of Corrs.*, 933 F.3d 285, 287 (3d Cir. 2019); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).  Additionally, when a plaintiff seeks compensatory damages, as Plaintiff does here, he must show "intentional discrimination under a deliberate indifference standard."  *Furgess*, 933 F.3d at 289.

18

Thus, Plaintiff must prove (1) the County had "knowledge that a federally protected right is substantially likely to be violated," and (2) the County failed "to act despite that knowledge." *Id.* at 292. Plaintiff can show such a right was "substantially likely to be violated" by (1) "alleging 'a failure to adequately respond to a pattern of past occurrences of injuries or (2) "alleging facts that 'prove that the risk of . . . cognizable harm was so great and so obvious that the risk and the failure . . . to respond will alone support finding deliberate indifference.'" *Matthews v. Pa. Dep't of Corrs.*, 827 F. App'x 184, 187 (3d Cir. 2020) (alterations in original) (*quoting Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)).

For the purposes of summary judgment only, it is conceded Freitag was a qualified individual with a disability. However, Freitag was not deprived of the benefits of the County's services, programs, or activities because of his disability. Freitag was provided medical care for his mental health issues while at BCCF.  (SUMF ¶¶ 24-28). Additionally, Plaintiff was observed the morning of his suicide. (SUMF ¶¶ 51-53). The failure to observe Freitag within thirty minutes of the prior observation is not tantamount to disability discrimination, but rather is at best, a potential violation of BCCF policy, or PCM's failure to diagnosis, neither of which are encompassed by the ADA.  *See Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006).

Further, as discussed above, there is no evidence that the County acted with deliberate indifference towards Freitag. Because "[t]he definition of deliberate indifference in the . . . ADA context is consistent with the standard of deliberate indifference in the context of § 1983 suits by prison inmates," the ADA claim should be dismissed with prejudice. *Matthews*, 827 F. App'x at 188 (first alteration in original) (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 n.23 (3d Cir. 2013)).  Thus, summary judgment as to Plaintiff's ADA claim should be granted.

**VI.     CONCLUSION**

Based on the foregoing reasons, Defendants County of Bucks and Correctional Officers

Moody, Murphy, and Young request that summary judgment be granted in their favor.

Defendants request this Court dismiss all claims asserted against them with prejudice.

Dated: May 17, 2022

Jeffrey M. Scott, Esquire
Kerri E. Chewning, Esquire
Alexis M. Way, Esquire
ARCHER & GREINER
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA  19103
(215) 963-3300
Counsel for Defendants Bucks County,
Correctional Officer Moody, Correctional Officer Murphy,
and Correctional Officer Young

224401837v2