IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES JOSEPH FREITAG, Jr., as ADMINISTRATOR of the ESTATE OF CHARLES JOSEPH FREITAG, SR.,**<br><br>　　　　　　　　　　**Plaintiff,**<br>　　vs.<br><br>**COUNTY OF BUCKS, et al.**<br><br>　　　　　　　　　　**Defendants.** | **CIVIL ACTION**<br><br>**NO.  2:19-cv-05750** |

**DEFENDANTS COUNTY OF BUCKS AND CORRECTIONAL OFFICERS MOODY, MURPHY, AND YOUNG'S STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT**

**Freitag's Arrest**

1. On September 13, 2017, Charles Freitag ("Freitag") drove his truck through the exterior wall of Brenda Plocher, his ex-wife, and James Brennan's house.  (Am. Compl. ¶ 44, JA0000008, attached hereto as Exhibit 1).

2. Freitag was arrested and charged with the following first-degree felony:

    [Freitag] did attempt to cause serious bodily injury to another Brenda Plocher and James Brennan, or did cause such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human file, that is to say [Freitag] did drive a motor vehicle through at and through an occupied structure, 5 Martha Circle, Fallsington Pa, in violation of Section 2702(a)(1) of the PA Crimes Code. 18 Pa.C.S. 2702(a)(1) Felony 1st).

    [Exhibit 1 at ¶ 48, JA0000008; Police Criminal Complaint, JA00000756-58, attached hereto as Exhibit 57.]

3. Freitag made bail and was released from custody pending his trial which commenced on June 4, 2018.  (Exhibit 1 at ¶¶ 48, 53-54, JA000008-9).

1

4. On June 4, 2018, a jury found Freitag guilty of aggravated assault.  The court revoked Freitag's bail and he was sent to Bucks County Correctional Facility ("BCCF"). (Exhibit 1 at ¶¶ 54-55, JA0000009).

## Mental Health Services at BCCF

5. The County of Bucks entered a contractual arrangement with PrimeCare Medical, Inc. (PCM) in 2013, to provide comprehensive healthcare for inmates in the custody of the BCCF. As part of the agreement, PCM nursing personnel was on-site at BCCF 24-hours a day, seven days a week, 365 days a year.  (Exhibit 1 at ¶ 16, JA000004-5).

6. PCM provided mental health services to BCCF inmates pursuant to a contract with Bucks County.  (Exhibit 1 at ¶ 16, JA000004-5).

7. Abbey Cassidy, Psy.D, an employee of PCM, was the Mental Health Director at BCCF at the time of Mr. Freitag's death.

8. PCM employed all of the medical providers (physical and mental health) who assessed and provided treatment to Mr. Freitag during his incarceration.  (Exhibit 1 at ¶¶ 17-21; See Medical Records, JA0000512-26, attached hereto as Exhibit 45; Resume of Christina Penge, JA0000368, attached hereto as Exhibit 39; Resume of Jessica Mahoney, JA0000371, attached hereto as Exhibit 40; Resume of Stephan Brautigam, JA0000728, attached hereto as Exhibit 51; Resume of Avia James, JA0000733, attached hereto as Exhibit 52).

## Different Levels of Watches at BCCF and Freitag's Placement

9. Upon Freitag's admission to BCCF, Nurse Sareigo, employed by co-defendant PCM conducted an "Intake Suicide Screening." (Exhibit 1 at ¶ 56, JA0000009; Exhibit 45, JA0000423-24; Exhibit 58, JA0000760).

10. Freitag was placed on a Level 2 Suicide Watch by PCM.  (Exhibit 45, JA0000444; Exhibit 58, JA0000760).

11. BCCF has different types of "watches":  constant watch; acute watch/level 1 and level 2; and regular watch/level 3.  (Exhibit 4, JA0000037-39; SOP B-3.23, JA0000024-25, attached hereto as Exhibit 2; SOP B-4.60, JA0000027-29, attached hereto as Exhibit 3).

12. Constant watch, level 1 watch, and level 2 watch are reserved for inmates who are either actively suicidal or inmates who have suicidal ideations.  (Exhibit 2, JA0000024-25; Exhibit 3, JA0000029; Exhibit 4, JA0000037-38 ).

13. A level 2 watch is for inmates who have "suicidal ideation but no plan to commit suicide."  (Exhibit 2, JA0000025; Exhibit 4, JA0000038).  On a level 2 watch, an inmate's cell is stripped of anything that could be used to inflict self-harm.  (Exhibit 2, JA0000025; Exhibit 3, JA0000028; Exhibit 4, JA0000038).

14. When an inmate is placed on level 2 watch, the assigned corrections officer "is responsible for observing the inmate at random intervals not to exceed 15 minutes and record the inmate activities on the acute watch monitor form."  (Exhibit 2, JA0000025; Exhibit 3, JA0000029; Exhibit 4, JA0000039).  Additionally, an inmate monitor will be posted outside the cell to make constant observations and must record the inmate's activities every five minutes on the acute watch monitoring form.  (Exhibit 2, JA0000025; Exhibit 3, JA0000029).

15. A level 3/regular watch "is not used for suicide prevention, but reserved for the inmate whose behavior warrants closer observation."  (Exhibit 2, JA0000025; Exhibit 4, JA0000039).  Under Level 3, the assigned correctional officers are required to observe

all inmates, including inmates on this level of watch, in staggered intervals not to exceed 30 minutes and log their observations. On this level, an inmate monitor observes the inmate every fifteen minutes and logs their observations on an inmate monitor form. (Exhibit 2, JA0000025; Exhibit 3, JA0000028; Exhibit 4, JA0000039; Moody Deposition, 45:4-9, N.T. 12/23/20, JA0000163, attached hereto as Exhibit 17).

16. PCM's mental health staff determine the observation status and watch status after a medical assessment is completed. (Nottingham Deposition 39:5-9, N.T. 5/5/21, JA0000188, attached hereto as Exhibit 19; SOP B-4.66, JA0000036, attached hereto as Exhibit 4).

17. On June 5, 2018, PCM Defendant Jessica Mahoney, Psy.D, conducted a mental health intake on Freitag, (Exhibit 45, JA0000480-81), and a suicide risk assessment (Exhibit 45, JA0000527-32). Defendant Mahoney determined Freitag should remain on the level 2 watch. (Exhibit 45, JA0000519; Exhibit 58, JA0000760).

18. Freitag submitted a sick call slip on June 5, 2018 with the notation of "feeling depression." Mr. Freitag was seen by the mental health department on June 6, 2018. (PCM Summary of Medical Contacts, JA0000760, attached hereto as Exhibit 58).

19. On June 6, 2018, PCM Defendant Avia James, LPC removed Freitag's level 2 watch status and stepped him down to a level 3 watch, (Exhibit 45, JA0000444, JA0000518-19), following a second suicide risk assessment (Exhibit 45, JA0000533-38).

20. On June 8, 2018, PCM Defendant James removed Freitag from level 3 watch. (Exhibit 45, JA0000444).

21. On July 31, 2018, Freitag's attorney emailed BCCF Deputy Warden Clifton Mitchell stating he was getting reports that Freitag "is not doing well incarcerated and has a

history of suicide attempts." (Email from Paul Lang to Deputy Warden Mitchell, JA0000042, attached hereto as Exhibit 5).

22. Deputy Warden Mitchell contacted Dr. Abbey Cassidy, the Director of Mental Health Services employed by PCM assigned to BCCF, and requested a mental health evaluation be conducted on Freitag. (Mitchell Deposition 14:4-13, N.T. 3/25/21, JA0000195, attached hereto as Exhibit 20; Dr. Cassidy email, JA0000044, attached hereto as Exhibit 6). Defendant James then conducted a mental status exam on Freitag. (Exhibit 45, JA0000482-85).

23. On July 31, 2018, Freitag was placed on a level 3/regular watch by PCM Defendant James. (Exhibit 45, JA0000444).

24. From August 1 to August 17, Freitag had eight visits with mental health care employees. He denied suicidal ideation on each occasion. On seven of the visits, Freitag denied mental health concerns and mental health care employees noted that he appeared a low risk of self-harm. (Exhibit 45, JA0000521-26; Exhibit 58, JA00000760).

25. Mr. Freitag was seen by PCM medical providers on August 1st, 3rd, 6th, 10th, 14th and 15th. (Exhibit 58, JA0000760; Exhibit 45, JA0000522-26).

26. On August 17, 2018, seven days before Freitag's sentencing, PCM Defendant Penge removed Freitag from level 3 watch. (Exhibit 45, JA0000444, JA0000521-22).

27. On August 22 and 23, Freitag had visits with mental health care employees. He denied any mental health concerns and suicidal ideation on both visits, and mental health care employees noted that he appeared low risk for self-harm. (Exhibit 45, JA0000520-21).

28. Freitag was scheduled for a medical appointment to occur on August 27, 2018. (Exhibit 58, JA0000760).

## The Day of Freitag's Sentencing

29. On Friday, August 24, 2018, Freitag was sentenced to six to twelve years imprisonment, to be served in a State operated corrections facility. (Exhibit 1 at ¶¶ 82, 85, JA0000014-15).

30. On August 24, 2018, at 3:52 pm, after Freitag's sentencing, Bucks County Department of Corrections Administrative Lieutenant Ara Kimbrough emailed Deputy Warden Mitchell and others informing them of Freitag's sentence. (Kimbrough, Mitchell, Metellus email chain, JA0000046, attached hereto as Exhibit 7).

31. At this time, Deputy Warden Mitchell did not know that Freitag had two prior suicide attempts. (Exhibit 20, Mitchell Deposition 77:10-18, JA0000196).

32. At this time, Deputy Warden Mitchell did not know that one of Freitag's suicide attempts was what led to his arrest, prosecution, conviction, and incarceration. (Exhibit 20, Mitchell Deposition 77: 14-18, JA0000196).

33. At this time, Deputy Warden Mitchell did not know that Freitag had been expressing anxiety about his sentencing. (Exhibit 20, Mitchell Deposition 77:21-24, JA0000196).

34. Deputy Warden Mitchell forwarded the email to Carl Metellus, a BCCF case management supervisor, saying "[u]nlock [make] sure he's on a watch." (*Id.*).

35. Mr. Metellus forwarded Deputy Warden Mitchell's email to Breanne Morrow (another case manager) stating: "I maxed him and added the lvl 3 alert. Could you notify the module of the R[egular] W[atch] please." (*Id.*; Metellus Deposition 58:5-12, N.T. 12/22/20, JA0000199, attached hereto as Exhibit 21).

36. When Freitag returned from sentencing, he did not express any suicidal ideations or self-harm, to any BCCF employee; or to his brother, whom he spoke to, after returning to BCCF.  (Deposition of Robert Freitag, 45:18-48:14, JA0000792-95, attached hereto as Exhibit 62).

**Bravo Module at BCCF**

37. "B" or Bravo module at BCCF, where Freitag was assigned, is a general population unit. (Exhibit 17, Moody Deposition 45:22-46:2, JA0000163-64; Young Deposition 30:1-3, N.T. 12/23/20, JA0000178, attached hereto as Exhibit 18).

38. Mr. Freitag was assigned to B module, Cell B3, on August 24, 2018. (See Screenshot of Freitag's Movement, JA0000201(a)-(l), attached hereto as Exhibit 23(a), depicting Cell B3).

39. In August 2018, B module had 46 two-man cells; thus the maximum population of inmates B module could house is 92.  (Exhibit 18, Young Deposition 30:4-8, JA0000178).

40. In 2018, B module was typically at a "steady 92" for occupancy.  (Exhibit 18, Young Deposition 30: 9-13, JA0000178).

41. Two officers were assigned to B module at a time.  (Exhibit 18, Young Deposition 31:24-32:2, JA0000179-80).

**The Day After Freitag's Sentencing**

42. On August 25, 2018, Defendants Moody and Young were the officers assigned to B module.  They reported for duty at approximately 6:00 a.m.  (Officer Activity Log, JA0000050, attached hereto as Exhibit 8).

43. Officer Murphy was a special assignment officer on August 25, 2018, meaning he was not assigned to B module that day, but he was there to provide breaks for Officers Moody and Young. (Exhibit 16, Murphy Deposition 21:8-21, 39:5-12, JA0000152, JA0000156).

44. Officers Moody, Murphy, and Young did not know about Freitag's prior suicide attempts. (Exhibit 17, Moody Deposition 57:6-11, JA0000168; Exhibit 18, Young Deposition 15:12-15, JA0000176; Murphy Deposition 33:17-34:14, N.T. 3/25/21, JA0000153-54, attached hereto as Exhibit 16).

45. Officers Moody, Murphy, and Young did not know what Freitag had been charged and convicted of prior to August 25, 2018. (Exhibit 17, Moody Deposition 55:19-56:14, JA0000166-67; Exhibit 18, Young Deposition 15:8-16:9, JA0000176-77; Exhibit 16, Murphy Deposition 33:17-34:9, JA0000153-54).

46. Officer Murphy had no knowledge of Freitag being placed on any kind of watch prior to the morning of August 25, 2018. (Exhibit 16, Murphy Deposition 34:10-14, JA0000154).

47. Officer Moody had no knowledge of Freitag being placed on suicide watch on any previous occasions. (Exhibit 17, Moody Deposition 57:1-8, JA0000168).

48. Officer Young recalled Freitag being placed on regular watch on "at other times" prior to August 25, 2018. (Exhibit 18, Young Deposition 60:3-8, JA0000184).

49. On August 25, 2018, at 9:11 am, Freitag left his cell to get his medication. (Video of B Module beginning at 8:13 a.m. on Aug. 25, 2015, JA0000200, attached hereto as Exhibit 22; Snapshots of Mr. Freitag's Movement 9:11 to 9:16 am, JA0000201(a)-(l), attached hereto as Exhibit 23(a); Exhibit 17, Moody Deposition 87:2-88:1,

8

JA0000171-72).  Freitag returned to his cell at 9:16 am.  (Video of B Module beginning at 9:13 a.m. on August 25, 2018, JA0000201, attached hereto as Exhibit 23; Exhibit 23(a), JA0000201(a)-(l); Exhibit 17, Moody Deposition 90: 2-10, JA0000173).

50. Officer Murphy arrived on B module at approximately 10:00 a.m. to temporarily relieve Officer Moody. (Exhibit 8, JA0000051).

51. At 10:04 a.m., Officer Murphy observed Freitag in his cell. (Exhibit 23, JA0000201; Snapshot of Officer Murphy 10:04 am Observation B3, JA0000201(m), attached hereto as Exhibit 23(m); Onisick Incident Report dated August 25, 2018, JA0000054, attached hereto as Exhibit 9).

52. At 10:21 a.m., Officer Murphy observed Freitag in his cell.  (Video of B Module beginning at 10:13 a.m., JA0000202, attached hereto as Exhibit 24; Snapshot of Officer Murphy 10:21 am Observation B3, JA0000202(a), attached hereto as Exhibit 24(a); Exhibit 16, Murphy Deposition 35:5-25, JA0000155; Exhibit 9, JA0000054).

53. At 10:32:19 a.m., inmate monitor Hugh Caldwell, who was using a cane to walk, looked into Freitag's cell.  (Exhibit 24, JA0000202).

54. Officer Murphy left B module at 10:40 a.m.  (Exhibit 16, Murphy Deposition 40:21-41:1, JA0000157-58; Exhibit 24, JA0000202).

55. At 10:55 a.m., another inmate was walking by Freitag's cell, looked in, and saw Freitag bleeding on the bed. The inmate called to Officers Moody and Young for assistance. (Exhibit 9, JA0000053-54; Exhibit 17, Moody Deposition 64:2-9, 65:11-15, JA0000169-70; Exhibit 24, JA0000202).

56. Officer Moody went over to Freitag's cell, called into Freitag, and received no response. Officer Moody told Officer Young to call a medical emergency. (Exhibit 17, Moody Deposition 65:18-24, JA0000170; Exhibit 9, JA0000053, JA0000055).

57. Emergency personnel responded but were unable to provide life-saving medical procedures.

58. Freitag used a plastic shard from a coffee cup to make the wounds on his forearms. (Exhibit 9, JA0000054).

59. The time that Freitag commenced cutting his arms is unknown.

60. The time that Freitag loss consciousness is unknown.

61. Dr. Ian Hood determined that the cause of death was "incised wounds of arms." (Exhibit 45, JA0000677; Exhibit 9, JA0000053; Hood Autopsy, JA0000059, attached hereto as Exhibit 10).

## Officer Training at BCCF

62. Captain James Nottingham was the County's designee in the following topics as set forth in Plaintiffs' Notice of Deposition under F. R. Civ. P. 30(b)(6), BCCF's policies, practices, and procedures in or around August 2018 regarding: the responsibility of correctional officers and supervisors to conduct cell checks for persons on level 3 watch; supervision of inmate workers; supervision of corrections officers; and related matters. (Notice of Deposition, JA0000715-18, attached hereto as Exhibit 48).

63. Prior to being appointed to the position of corrections officer, cadets attend the Training Academy where they have approximately 280 hours of training, including training on the Standard Operating Procedures/policies. (Exhibit 19, Nottingham Deposition 56:24-57:1, JA0000189-90).

64. Once appointed to the position of corrections officer, officers receive thirty-two hours of in-service training per year under the instruction of the Training Lieutenant. The topics include watch procedures, and relevant topics that were taught at the Training Academy. (Exhibit 19, Nottingham Deposition 19:17-20, 56:24-57:5, JA0000187, 189-90).

65. The in-service training also included roleplaying; having the policies read to the officers verbatim; giving a copy to the officers to take home; in-service training reviewing the policies; any expertise or relevant experience the Training Lieutenant or any other Supervisor has personally experienced as a module officer is explained. (Exhibit 19, Nottingham Deposition 57:19-58:22, JA0000190-91).

66. BCCF policies B-3.23 and B-4.66 (Watch Policies) were taught during officer in-service training. (Police Training Center Letter dated March 22, 2017, JA0000120, attached hereto as Exhibit 12).

67. Officers Moody, Murphy, and Young received training regarding suicide prevention, and watch and observation procedures. (Officer Moody Training Transcript, JA0000126-29, attached hereto as Exhibit 13; Officer Murphy Training Transcript, JA0000131-38, attached hereto as Exhibit 14; Officer Young Training Transcript, JA0000140-49, attached hereto as Exhibit 15; NCCHC Documents, PCM letter to NCCHC dated March 22, 2017, JA0000111-12, attached hereto as Exhibit 12; Exhibit 12, Email from Greg Landis dated March 20, 2017 regarding SOP B-3.23, JA0000119; Exhibit 12, Letter from the Director of Law Enforcement Training dated March 22, 2017, JA0000120).

**National Commission on Correctional Health Care ("NCCHC") Accreditation**

68. Captain Nottingham appeared for a second deposition on April 26, 2022 as the County's designee in the following topics as set forth in Plaintiff's Notice of Deposition under F. R. Civ. P. 30(b)(6): any and all findings by NCCHC in and around 2016 and 2017 regarding the use of "inmate workers" at BCCF for the purpose of medical, mental health, and suicide prevention watches… ; (Notice of Deposition, JA0000738-39, attached hereto as Exhibit 54).

69. "NCCHC establishes standards for health services in correctional facilities, operates a voluntary accreditation program for institutions that meet those standards, produces resource publications, conducts educational conferences and offers certification for correctional health professionals." (https://www.ncchc.org/about).

70. The County, in conjunction with PCM, sought to voluntarily seek accreditation through the NCCHC to strive for best correctional health practices for the health and safety of BCCF's inmates. (Second Nottingham Deposition, 20:12-21, JA0000799, attached hereto as Exhibit 63).

71. The County was committed to continued accreditation and issued plans of corrections when recommended by NCCHC. (Exhibit 63, Second Nottingham Deposition 20:22-21:4, JA0000799-800).

72. Recommendations made by NCCHC provided insight to the County in making improvements to its watch procedures to ensure inmate safety. (Exhibit 63, Second Nottingham Deposition 36:11-18, JA0000801).

73. In June 2016, NCCHC issued an accreditation report for BCCF indicating that it did not meet the NCCHC standard regarding Inmate Workers and Suicide Prevention Programs. (Exhibit 11, JA0000072, 79, 85).

74. To satisfy those standards, NCCHC recommended corrective action in the form of policy and procedure changes, staff training, submission of evidence that watches are occurring, and evidence that staff was made aware that they are to conduct watches with inmates "used as supplementary companions." (Exhibit 11, JA0000079, 85).

75. In response to NCCHC's report, the County created three new watch forms distinguishing those used by correctional officers and inmate monitors. (Exhibit 12, JA0000121, 123-24; Exhibit 63, Second Nottingham Deposition 36:19-24, JA0000801).

76. The new forms also differentiated those used to monitor inmates on acute watch and those used to monitor inmates on regular watch. (Exhibit 12, JA0000121, 123-24; Exhibit 63, Second Nottingham Deposition 36:19-24, JA0000801).

77. Additionally, the County required correctional officers to make log entries on the computer after every thirty-minute tour was completed. (Exhibit 12, JA0000123).

78. On September 22, 2016, the County revised SOP B-4.60 to clarify the different levels of watch and define the responsibilities of staff and inmate monitors relating to those watch levels. (Exhibit 12, JA0000121, 123-24; Exhibit 63, Second Nottingham Deposition 58:3-19, JA0000804).

79. This change was discussed at the beginning of the officer shifts for the following week. (Exhibit 12, JA0000121, 123-24).

80. In response to the NCCHC notice, the Health Services Administrator for Bucks County Correctional Facility informed NCCHC that "BCCF Inmate monitors are used as supplementary help with watches and are educated on their responsibilities (education forms and audit forms submitted as evidence)." (Exhibit 12, PCM letter to NCCHC, JA0000122).

81. In March 2017, the County took further corrective action by enacting SOP B-3.23, listing the responsibilities of correctional officers during watches, and B-4.66, specifying the types of watches and the roles of correctional officers. (Exhibit 12, JA0000111; Exhibit 2, JA0000024; Exhibit 4, JA0000035).

82. SOP B-3.23 was to be discussed with corrections officers at the beginning of shifts for the following week and addressed at in-service training. (Exhibit 12, JA0000119; Exhibit 63, Second Nottingham Deposition 38:7-39:4, JA0000802-03).

83. On March 22, 2017, Richard Vona the Director of Law Enforcement Training for the County wrote to BCCF Warden Paul Lagana informing him that SOPs B-3.23 and B-4.66 would be taught at in-service training and completed by the end of the 2017 in-service presentations. Mr. Vona also advised in training going forward, "[m]ental health professionals [would] present suicide prevention for in-service training starting in 2018." (Exhibit 12, JA0000120).

84. On May 16, 2017, as a result of all the corrective action taken, NCCHC wrote to BCCF informing BCCF that NCCHC will continue to accredit BCCF and that BCCF was in compliance with NCCHC's "Standards for Health Services in Jails." (Exhibit 11, Accreditation Letter dated May 16, 2017, JA0000065).

Dated: May 17, 2022

*Jeffrey M. Scott* (signature)

Jeffrey M. Scott, Esquire
Alexis M. Way, Esquire
ARCHER & GREINER
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA  19103
(215) 963-3300
Counsel for Defendants Bucks County,
Correctional Officer Moody, Correctional Officer Murphy,
and Correctional Officer Young

224402443v1