# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES JOSEPH FREITAG, JR., as Administrator of the ESTATE OF CHARLES JOSEPH FREITAG, SR., <br>                      Plaintiff <br> v. <br><br> BUCKS COUNTY; <br> PRIMECARE MEDICAL, INC.; <br> STEPHAN BRAUTIGAM, PMHNP; <br> JESSICA MAHONEY, PSY.D.; <br> AVIA JAMES, LPC; <br> CHRISTINA PENGE, LPC; <br> CORRECTIONAL OFFICER MOODY; <br> CORRECTIONAL OFFICER MURPHY; and <br> CORRECTIONAL OFFICER YOUNG, <br>                      Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | NO.: 2:19-cv-05750-JMG <br><br> CIVIL ACTION – LAW <br><br> JUDGE JOHN M. GALLAGHER <br><br><br> *Electronically Filed* <br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

## REPLY BRIEF OF THE PRIMECARE DEFENDANTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The PrimeCare Defendants filed their Motion for Summary Judgment (Doc. 77), supporting Brief (Doc. 77-1), Statement of Undisputed Facts (Doc. 78) and Joint Appendix (Doc. 80) on May 17, 2022. Plaintiff filed his Consolidated Opposition to the Defendants' Motions for Summary Judgment (Doc. 90), Statement of Facts in Opposition to Defendants' Motions for Summary Judgment (Doc. 90-2), Response to the PrimeCare Defendants' Statement of Undisputed Facts (Doc. 90-3) and Supplemental Appendix (Doc. 90-5) on June 7, 2022. This Court issued an Order (Doc. 92) on June 14, 2022 permitting Defendants the ability to file a Reply Brief to Plaintiff's filings opposing Defendants' Motions for Summary Judgment. This Brief is filed pursuant to this Court's June 14, 2022 Order.

Prison officials are not required to prevent an inmate from committing suicide. *Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017). Thus, there is no strict liability against the PrimeCare Defendants, and Plaintiff has the burden of establishing his cause of action. There does not appear to be much dispute that in a prison suicide case, whether a pre-trial detainee or a convicted prisoner, a plaintiff must establish the following three elements to successfully demonstrate a viable cause of action in a prison suicide setting:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

*Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017); *Colburn v. Upper Darby Township*, 838 F.2d 663, 664 (3d Cir. 1988).

For the reasons articulated in the PrimeCare Defendants' Motion for Summary Judgment and related filings, as well as this Brief, it is submitted that Plaintiff cannot meet his heavy burden in establishing questions of fact to overcome the PrimeCare Defendants' Motion for Summary Judgment.

**1. Plaintiff cannot establish that Mr. Freitag had a particular vulnerability to suicide.**

Plaintiff asserts that Mr. Freitag had a particular vulnerability to suicide because he had prior suicide attempts, had a diagnosed mental health disorder, had prior mental health hospitalizations, had limited insight and judgment, would think about harming himself when depressed, and had anxiety about his sentencing. It is submitted that these factors are insufficient to demonstrate a particular vulnerability to suicide.

Mr. Freitag denied being suicidal during all 19 of his mental health evaluations at BCCF, and Mr. Freitag was compliant with taking his mental health medications. The final three evaluations leading up to Mr. Freitag's sentencing were on August 17, 2018, August 22, 2018, and August 23, 2018. Mr. Freitag was not assessed as being depressed during any of these evaluations. The August 17, 2018 evaluation was performed by Ms. Penge and revealed the following: he was cooperative and pleasant; he was engaged and calm; he was alert and oriented; he was appropriately dressed; he made good eye contact; his speech was clear with normal rate and tone; he reported a good appetite and sleep; and he denied suicidal ideation, homicidal ideation, or any delusions.

Dr. Mahoney's evaluation on August 22, 2018 (two days before Mr. Freitag was sentenced) revealed that: he was alert and oriented; his thinking was clear and his speech was normal; he was engaged and made appropriate eye contact; his mood was pleasant and his affect was congruent; he was calm and cooperative; and he denied suicidal ideation, homicidal ideation, or any delusions.

Ms. Penge evaluated Mr. Freitag on August 23, 2018, which was the day before his sentencing, which revealed that: he was cooperative and pleasant; engaged and calm; alert and oriented; appropriately dressed; made good eye contact; had clear speech with a normal rate and tone; had a good appetite and sleep; and denied suicidal ideation, homicidal ideation, or any delusions.

In the *Estate of Thomas v. Fayette County*, 194 F. Supp. 3d 358 (W.D. Pa. 2018), an inmate committed suicide. His estate filed suit and alleged the inmate had the following risk factors of suicide: history of mental illness, depression, prior suicide attempt, substantial drug

use, mood swings, belligerence to prison staff, and symptoms of withdrawal. The *Thomas* Court held that those factors did not establish a particular vulnerability to suicide. The *Thomas* Court stated:

> there is a sound, pragmatic reason for the law to not quickly make such a logical jump. Were the law to impose liability upon a prison (or its officials) whenever there was any possibility for suicide (perhaps because of the presence of some recognized or presumed suicide correlates), prisons could be led to place any individual showing or suspected of having such suicide correlates into suicide watch, resulting in severe restrictions on a prisoner's liberty interests.

*Id.* at 377 n. 18.

In *Michaux v. Temas*, 2020 WL 3799755 (W.D. Pa. 2020), the plaintiff contended the decedent exhibited 14 suicide risk factors which included a recent suicide attempt, history of mental illness, depression, hallucinations and delusions, paranoia, prescribed antidepressant medication, anxiety and agitation, isolation, sleep disturbance, placement in SHU, incarceration for a violent crime, prior suicide attempt in the same prison, placement in SHU for fighting, and history of opioid dependence. However, the *Michaux* court found a lack of particular vulnerability of suicide where the decedent repeatedly denied suicidal ideation; did not submit sick call slips for months before the suicide; and was friendly, cooperative, and compliant in taking his medication, even hours before the suicide. *See also Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314 (3d Cir. 2005). (The court held that plaintiff failed to establish a particular vulnerability to suicide where the decedent was in good spirits, was talking and joking with arresting officers upon arrival to the jail, denied being suicidal, and was described as being polite, cooperative, alert, and not agitated even though the intake officer at the jail noted the decedent had extreme remorse, seemed distant, was unresponsive to questions, suggested he was a failed father and person, and he was on a 24-hour drug and alcohol binge.)

It is submitted that Mr. Freitag had risk factors for being potentially suicidal. However, simply having risk factors for potential suicidality is not enough. As the above cases indicate, Mr. Freitag's risk factors did not exhibit a **strong likelihood** of being suicidal.

Further, neither Ms. Penge nor Dr. Mahoney knew or should have known that Mr. Freitag had a particular vulnerability to suicide. They assessed him on multiple occasions. After Mr. Freitag was removed from suicide precautions in early June of 2018 and throughout the remainder of his incarceration, Mr. Freitag was always assessed as having low risk of self-harm. Finally, Plaintiff's assertion that it may have been Mr. Freitag's sentence which caused his suicidality was not known to either Ms. Penge or Dr. Mahoney. Simply stated, there was simply no reason for either Ms. Penge or Dr. Mahoney to know that Mr. Freitag had a strong likelihood of a particular vulnerability to suicide when balancing his potential risk factors with the protective factors and his presentation. Therefore, the PrimeCare Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment.

    **2.    Plaintiff cannot demonstrate a reckless or deliberate indifference to a particular vulnerability of suicide.**

Ms. Penge and Dr. Mahoney assessed Mr. Freitag for potential suicidality during the multiple times they evaluated him. During every assessment, Mr. Freitag denied being suicidal. Mr. Freitag was generally cooperative, alert, oriented, compliant with his medications, and did not show signs of depression. Mr. Freitag was assessed as being a low risk of self-harm. As such, suicide precautions were deemed not necessary. At most, Plaintiff can demonstrate a viable cause of action for negligence.

Negligent misdiagnosis or an inadvertent failure to provide care does not establish a Constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). "The

5

courts will not intervene upon allegation of mere negligence, mistake or difference of opinion." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, there must be proof that the indifference alleged was deliberate and actions intentional. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3d Cir. 1976). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims sounding in state tort law. *Bednar v. Cnty. of Schuylkill*, 29 F. Supp. 2d 250, 253 (E.D. Pa. 1998). A disagreement between a medical provider and an inmate as to the medical diagnosis and treatment does not constitute deliberate indifference. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).

Additionally, Mr. Freitag's anxiety about his sentencing was not ignored. To the contrary, Mr. Freitag was scheduled for a follow-up evaluation for the first working day after the sentencing. Mr. Freitag was aware that the appointment was scheduled. Mr. Freitag was also aware of how to secure mental health treatment. Moreover, every person in the prison can place an inmate on suicide precautions if an inmate is deemed suicidal. Nursing staff is in BCCF 24 hours per day, 7 days per week to assess inmates. Mental health staff (including psychiatry) is on call 24 hours per day, 7 days per week. Thus, there is a safety net in place for when mental health staff is not physically in the building. Accordingly, it is respectfully submitted that neither Ms. Penge nor Dr. Mahoney exhibited deliberate indifference to Mr. Freitag. Therefore, the PrimeCare Defendants' respectfully request that this Honorable Court grant their Motion for Summary Judgment.

### 3. Plaintiff cannot demonstrate a direct cause of action against PrimeCare.

As to PrimeCare, it is submitted that Plaintiff cannot demonstrate an underlying constitutional violation to attribute liability to PrimeCare. *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978); *Johnson v. City of Phila.*, 837 F.3d 343, 354 (3d Cir. 2016) (citing *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003)); *see also Natale*, 318 F.3d at 582-584 (acknowledging that a § 1983 claim against Prison Health Services (PHS) for its policy or custom was only viable if, among other things, there was evidence that PHS employees were deliberately indifferent to the plaintiff's serious medical needs). And as such, it is submitted that PrimeCare is entitled to summary judgment.

Additionally, Plaintiff cannot demonstrate a constitutionally-deficient policy, practice, or custom. Plaintiff is asserting that PrimeCare was constitutionally required to have mental health treatment at BCCF longer than the 10 hours per day, 5 days per week which were in existence in August of 2018. In essence, Plaintiff is asking this Court to interject the Court's judgment as to what medical staffing hours are needed for a given correctional facility. Case law has revealed no authority for the proposition that a prison is required to have 24/7 in-person mental health coverage or that a court has ordered 24/7 mental health coverage. Case law does show that courts are generally reluctant to second guess the judgment of healthcare providers. *Bednar v. Cnty. of Schuylkill*, 29 F. Supp. 2d 250, 253 (E.D. Pa. 1998).

Moreover, as stated above, a safety net is in place at BCCF when mental health staff is not in the building. Specifically, any time a correctional officer has any concern, whether it be medical or mental health for an inmate, a nurse is always available to conduct an assessment.

7

Security staff is trained to not make judgment calls about inmate health, but rather contact medical to make medical judgments. Mental health staff is available 24 hours per day, 7 days per week for consultation. There is no difference for security staff as to whether the mental health professional is in the building or not, because security is only responsible for contacting the medical department. It is then the responsibility of the medical professional to contact a member of mental health or implement some other treatment plan. Thus, there is a system in place to deal with critical events (which can occur at any time and not simply a sentencing) or any other potentially adverse circumstance for an inmate's medical or mental health.

There is no evidence in the record that there has been any other instance where it was alleged that an inmate did not receive a timely mental health evaluation after returning from court. There is absolutely no pattern of any similar cases to what Plaintiff has alleged in this case. As such, it is submitted that the process that was in place was constitutionally adequate. Moreover, the process that was in place provided Mr. Freitag with the opportunity to seek mental health care at any time during his incarceration if he chose to seek help. It is submitted that this Court should reject Plaintiff's invitation to impose treatment schedules in correctional facilities and that PrimeCare's Motion for Summary Judgment should be granted.

4. **Plaintiff cannot demonstrate deficient training or supervision.**

Plaintiff asserts that PrimeCare failed to properly train or supervise its mental health staff because Ms. Penge removed Mr. Freitag from Psychiatric Observation without contacting Dr. Cassidy. First, Dr. Cassidy did not specifically inform mental health staff that she needed to be contacted before Mr. Freitag was removed from Psychiatric Observation. Second, the PrimeCare Suicide Prevention Program specifically permits licensed professionals, such as Ms. Penge, to

remove individuals from Psychiatric Observation. Thus, Dr. Cassidy's retrospective testimony that she would have liked to have been informed about Mr. Freitag being removed from Psychiatric Observation was not specifically provided to mental health staff nor was this request consistent with PrimeCare policy.

Additionally, this argument by Plaintiff is a red herring. Mr. Freitag was literally evaluated the two days before his sentencing. Thus, being removed from Psychiatric Observation had no impact on this treatment. Further, when Mr. Freitag returned to BCCF after his sentencing, security staff placed him upon Psychiatric Observation. Thus, Mr. Freitag never really was off Psychiatric Observation. Therefore, the PrimeCare Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment.

    Respectfully submitted,

    MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN

By:   /s/ *John R. Ninosky*
    JOHN R. NINOSKY, ESQUIRE
    PA Attorney ID No. 78000
    100 Corporate Center Drive, Suite 201
    Camp Hill, PA 17011
    T: (717) 651-3709
    F: (717) 651-3707
    jrninosky@mdwcg.com

Date: June 21, 2022     Attorney for PrimeCare Defendants

LEGAL/146949170.v1

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of June, 2020, the foregoing *Reply Brief in Support of Motion for Summary Judgment* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record, which service satisfies the requirements of the Federal Rules of Civil Procedure.

Jonathan H. Feinberg, Esquire
Kairys, Rudovsky, Epstein & Messing, LLP
Cast Iron Building, Suite 501 South
718 Arch Street
Philadelphia, PA 19106
jfeinberg@krlawphila.com
*Attorney for Plaintiff*

Jeffrey M. Scott, Esquire
Jeffrey M. Kolansky, Esquire
Kerri E. Chewning, Esquire
Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103-7393
jscott@archerlaw.com
jkolansky@archerlaw.com
kchewning@archerlaw.com
*Attorneys for Bucks County Defendants*

Keith J. Bidlingmaier, Esquire
Assistant Solicitor
Bucks County Law Department
55 East Court Street
Doylestown, PA 18901
kjbidlingmaier@buckscounty.org
*Attorney for Bucks County and Corrections Officers Moody, Murphy, and Young*

MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN

By: s/ *John R. Ninosky*
    John R. Ninosky