## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES JOSEPH FREITAG, Jr., as ADMINISTRATOR of the ESTATE OF CHARLES JOSEPH FREITAG, SR.,** | **CIVIL ACTION**<br><br>**NO. 2:19-cv-05750** |
| **Plaintiff,**<br>**vs.** | |
| **COUNTY OF BUCKS, et al.** | |
| **Defendants.** | |

### DEFENDANTS COUNTY OF BUCKS AND CORRECTIONAL OFFICERS MOODY, MURPHY, AND YOUNG'S RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS IN <u>OPPOSITION TO SUMMARY JUDGMENT</u>

1.      Admitted.

2.      Admitted.

3.      Denied.  Officer Young testified that he believed that he had a duty to ensure the protection of prisoners under his supervision.  It is denied that Officer Moody stated, "there are rules in place to ensure such protection, and officers have an obligation to follow those rules." The cites to Mitchell's deposition and the cites to Nottingham's deposition do not support the argumentative statement of facts.  Mitchell testified that the edict is care, custody, and control. Ex. 20 Supp., 36:16-17, SA 958.  Nottingham testified that most important responsibility of correctional staff is to ensure the health and safety people incarcerated the in the facility as well as cleanliness.  (Nottingham Dep. 1, Ex. 19 Supp., 38:3-9, SA 915).

4.      Denied in part.  Admitted in part.  Neither Officer Young or Moody testified that it "is commonly understood."  It is admitted that both officers agreed that an inmate may become

suicidal at any time during his/her incarceration.  (Young Dep, Ex. 18 Supp., 37:21-38:2, SA 863-63; Moody Dep., Ex. 17 Supp., 33:17-20, SA 823).

5.      Denied.  All of these statements are argumentative and immaterial for summary judgment purposes.  Moody did not make these statements.  (Moody Dep., Ex. 17 Supp., 31:11-16, SA 822).  Mitchell did not make these statements.  (Mitchell Dep., Ex. 20 Supp., 40:5-12, SA 955).  Nottingham testified that correctional staff have a responsibility to prevent people from harming themselves.

6.      Denied. Plaintiff's counsel added words into a statement that was never said by Young.  Young stated, "It is the holiday season, no one wants to be in jail so a lot of them do superficial **things** for attention."  (Young Dep., Ex. 18 Supp., 51:1-25, 77:18-22, SA 877, 888)(emphasis added).  As these argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.

7.      Denied.  As these argumentative and conclusionary statements are addressed to other defendants and therefore no response is required

8.      Denied as stated.  Young, Moody, Metellus and Reed learned from training and policy that certain events could affect the mental health of an inmate.  BCCC Policy 4.66 Suicide Prevention Program JA000035 ("Inmates may become suicidal at any time during their incarceration.  Suicidal behavior is more likely at critical periods of time including commitment and the first several days thereafter, court hearings, sentencing, new criminal charges, after adjudication, following the receipt of bad news regarding self or family, after suffering some type of humiliation or rejection, and those who are in the early stages of recovery from severe depression.")

9.     Admitted that Charles Joseph Freitag, Sr., was admitted to BCCF on June 4, 2018, after a jury in the Bucks County Court of Common Pleas found him guilty of aggravated assault and related charges. As the remaining allegations, the answering parties are without sufficient information or belief to admit or deny these remaining background facts which were unknown to the individual Defendants and the County.

10.    The answering parties are without sufficient information or belief to admit or deny these remaining background facts which were unknown to the individual Defendants and the County.

11.    Denied as stated. (JA000756-58).

12.    Denied. These argumentative and conclusory statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).

13.    Denied. These argumentative and conclusory statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).

14.    Admitted that Bucks County had policies and procedures in place regarding levels of watches. The levels are set forth in Policy B-3.23. ( JA00023-25).

15.    Denied as stated. The Level 3 Regular Watch is defined by BCCC Policy 4.60 and sets forth the procedure. See JA0000027-33. Moreover, as these argumentative and conclusory statements are addressed to other defendants and therefore no response is required.

16.    Denied. These argumentative and conclusory statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County

Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts.

17.     Denied. These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts.

18.     Denied. These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts.

19.     Denied. These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts.

20.     Denied. These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts.

21.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).  Plaintiff has not disputed these facts.

22.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).  Plaintiff has not disputed these facts.

23.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).  Plaintiff has not disputed these facts.

24.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).  Plaintiff has not disputed these facts.  Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

25.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County

Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts. Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

26.     Denied. These argumentative and conclusory statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts. Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

27.     Denied. These argumentative and conclusory statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Plaintiff has not disputed these facts. Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

28.     The answering Defendants do not have sufficient information or belief as to admit or deny these allegations therefore said allegations are denied. .

29.     Admitted.

30.     Admitted.

31.     Denied as stated. Mitchell wanted Freitag to be seen by medical because he received the call from Mr. Lang.

32.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).  Plaintiff has not disputed these facts.  Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

33.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).  Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

34.     Denied.  These argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).  Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

35.     Denied.  Dr. Cassidy did not recall the conversation she had with Mitchell.  By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration.  (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).

36.      Denied.  Dr. Cassidy states in her deposition that she does not recall the conversation with Deputy Warden Mitchell, therefore said allegations are denied.  By way of further response

see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28). Moreover, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

37.     Denied. The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).

38.     Denied. The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).

39.     Denied. The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).

40. – 60.  Denied. The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied. As these argumentative and conclusionary statements are addressed to other defendants and therefore no response is required. By way of further response see Bucks County Statement of Uncontested Facts ("SUMF") which outline the medical records related to Decedent's incarceration. (ECF No. 88-1, ¶¶ 5-10; 17-20, 22-28).

61.     Denied.  The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied. Moreover, these argumentative and conclusionary statements are addressed to other defendants and therefore no response is required.

62.     Denied.  The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied. Dr. Cassidy further testified that not every inmate returning from court needs to be evaluated by a mental health professional. SA188:5-11.

63.     Admitted with addition.  Mental health providers are available and on call 24 hours a day, 7 days per week. (Weber Dep., Exhibit 59, p. 54:4-11 (JA0000780)).

64.     Denied.  This is not an accurate recitation of what Reed testified to, and therefore this paragraph is denied.

65.     Denied.  Mental health providers are available and on call 24 hours a day, 7 days per week. (Weber Dep., Exhibit 59, p. 54:4-11 (JA0000780)).  In August of 2018, mental health staff was available either in person or via telephone for any mental health concerns about a particular inmate 24 hours per day, 7 days per week.  (Weber Dep., Exhibit 59, p. 54:4-11 (JA0000780); Mahoney Dep., Exhibit 60, pp. 24:22– 25:6 (JA0000783-784)).

66.     Denied as stated.  The hours for mental health services were exhaustive.  (SA1037:14-25). In August of 2018, mental health staff was available either in person or via telephone for any mental health concerns about a particular inmate 24 hours per day, 7 days per week.  (Weber Dep., Exhibit 59, p. 54:4-11 (JA0000780); Mahoney Depo., Exhibit 60, pp. 24:22– 25:6 (JA0000783-784)).

67.     Admitted.

68.     Admitted that there was nothing preventing PrimeCare from increasing its mental health service hours.  In August of 2018, mental health staff was available either in person or via

telephone for any mental health concerns about a particular inmate 24 hours per day, 7 days per week. (Weber Depo., Exhibit 59, p. 54:4-11 (JA0000780); Mahoney Depo., Exhibit 60, pp. 24:22– 25:6 (JA0000783-784)).

69.     Denied as stated because mental health staff was available either in person or via telephone for any mental health concerns about a particular inmate 24 hours per day, 7 days per week.  (Weber Depo., Exhibit 59, p. 54:4-11 (JA0000780); Mahoney Depo., Exhibit 60, pp. 24:22– 25:6 (JA0000783-784)).  An inmate can request to see a mental health professional and therefore the remainder of paragraph 69 is denied.

70.     Denied.  Case Managers are required to meet with an inmate once they're sentenced or even after any other court date, if a need is presented.  When inmates come back from court, if they are sentenced to a lengthy sentence, the County Records Department flags it, contacts Administration, as well as the inmate's Case Manager.  A Case Manager can make a referral to medical or mental health.  If a Mental Health provider is unavailable, the inmate would be placed on a watch level, if deemed necessary.  (SA001136:10-25; SA001137:1-6).

71.     See Response to paragraph 70.

72.     Denied.  This statement is not a verbatim quote and therefore denied as it fails to mention that Dr. Cassidy provides suicide prevention training to County case managers and County correctional staff.  (SA 1190-91:4-11).  Moreover, mental health staff was available either in person or via telephone for any mental health concerns about a particular inmate 24 hours per day, 7 days per week.  (Weber Depo., Exhibit 59, p. 54:4-11 (JA0000780); Mahoney Depo., Exhibit 60, pp. 24:22– 25:6 (JA0000783-784)).  An inmate can request to see a mental health professional and therefore the remainder of paragraph 72 is denied.

73.     Denied.  This statement is not a verbatim quote and therefore denied as it fails to mention that Dr. Cassidy provides suicide prevention training to County case managers and County correctional staff.  (SA 1190-91:4-11).

74.     Admitted that Freitag was sentenced to six-to-twelve years of imprisonment.  As the remining averments, the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

75.     Denied.  The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

76.     Denied.  The answering Defendants do not have any personal knowledge of these statements therefore said statements are denied.

77.     Admitted in part.  Freitag's criminal sentence was reported on 3:52 pm to Deputy Mitchell and others.  (JA00046).  The remainder averments are denied as immaterial.

78.     Admitted.

79.     Admitted in part.  Carl Metellus, Case Management Supervisor was informed of Freitag's sentence, and Freitag placed him on Level III Watch.  (JA00046).  Admitted that Metellus directed a case manager to inform the officers in Freitag's housing area to initiate the Level 3 watch procedures.  The remainder averments are not material facts but comments on witnesses' deposition testimony which have no bearing on the legal question presented.

80.     Admitted in part.  Carl Metellus, Case Management Supervisor was informed of Freitag's sentence, and Freitag placed him on Level III Watch.  (JA00046).  Admitted that Metellus directed a case manager to inform the officers in Freitag's housing area to initiate the Level 3 watch procedures.

81.     Admitted in part.  Carl Metellus, Case Management Supervisor was informed of Freitag's sentence, and Freitag placed him on Level III Watch.  (JA00046).  Admitted that Metellus directed a case manager to inform the officers in Freitag's housing area to initiate the Level 3 watch procedures.

82.     Denied.  This averment is a misstatement of what the witness stated in his deposition and therefore said allegations are denied.  (SA1021:55:7-21).  Moreover, the remaining averments are not material facts but comments on witnesses' deposition testimony which have no bearing on the legal question presented. (Mitchell Dep., Ex. 20 Supp., 65:4-67:3, SA 975-77).

83.     Admitted in part. It is admitted that (1)  Deputy Warden Mitchell did not know that Freitag had two prior suicide attempts. (Exhibit 20, Mitchell Deposition 77:10-18, JA0000196); (2) Deputy Warden Mitchell did not know that one of Freitag's suicide attempts was what led to his arrest, prosecution, conviction, and incarceration.  (Exhibit 20, Mitchell Deposition 77: 14-18, JA0000196); (3) Deputy Warden Mitchell did not know that Freitag had been expressing anxiety about his sentencing. (Exhibit 20, Mitchell Deposition 77:21-24, JA0000196).  The reminder is denied as argumentative and not a fair reading of the record.

84.     Admitted that Mitchell had only basic training on mental health issues and was not a mental health clinician.  The remaining portions of the averment are mischaracterizations of Dr. Cassidy's deposition and are therefore denied.

85.     Objection.  The testimony is based on a hypothetical question and was objected to at the time of the deposition.  The testimony should be deemed inadmissible and not part of this summary judgment record as the witness also qualified his response.  Moreover, Mitchell did not state that he would have reached out to mental health staff to discuss precautions for Freitag therefore the averments are denied.

86.     Denied in part.  Admitted in part.  It is admitted that Dr. Cassidy was not aware that Freitag was placed on Level III Watch at the time Freitag returned from Court.  As the remaining allegations,  the answering Defendants do not have any personal knowledge of these statements therefore said statements are denied. Moreover, Dr. Cassidy is not an agent of the  County or the individual County Defendants.

87.     Denied.  The answering non-medical Defendants do not have any personal knowledge of these statements therefore said statements are denied. Moreover, Dr. Cassidy is not an agent of the County or the individual County Defendants and therefore her statements cannot be considered an admission by any of the non-medical defendants.

88.     Denied.  The answering non-medical Defendants do not have any personal knowledge of these statements therefore said statements are denied. Moreover, employees of PrimeCare are agents of the  County or the  individual County Defendants and therefore such statements cannot be considered an admission by any of the non-medical defendants.

89.     Denied.  The answering non-medical Defendants do not have any personal knowledge of these statements therefore said statements are denied.

90.     Denied.  The answering non-medical Defendants do not have any personal knowledge of these statements therefore said statements are denied. Moreover, Dr. Cassidy is not an agent of the County or the individual County Defendants and therefore her statements cannot be considered an admission by any of the non-medical defendants.

91.     Denied.  The answering non-medical Defendants do not have any personal knowledge of these statements therefore said statements are denied. Moreover, Dr. Cassidy is not an agent of the County or the individual County Defendants and therefore her statements cannot be considered an admission by any of the non-medical defendants.

92. Admitted. It is admitted that Bucks County Policy 4.60 requires a correctional officer to observe an inmate who is placed on Level III Regular Watch every 30 minutes. It is admitted that Bucks County Policy 4.60 requires an inmate monitor to observe an inmate who is placed on Level III Regular Watch every 15 minutes. (JA00027-28).

93. Admitted. It is admitted Mitchell testified that he expected Officers to follow County watch policies.

94. Denied as stated. It is admitted that policies are considered directives and govern the procedures. Captain Nottingham did not testify that polices are mandatory but directives for officers to follow. (SA 917:18-21). The remainder of the paragraph is objected to on the grounds that the question does not pertain to Freitag. The question and answer related to self-harm is a hypothetical and immaterial as to whether the individual County Defendants were deliberately indifferent to Freitag's serious medical needs. (SA 918:1-4.)

95. Admitted in part. Denied in part. It is admitted that Bucks County Policy 4.60 requires a correctional officer to observe an inmate who is placed on Level III Regular Watch every 30 minutes. It is admitted that Bucks County Policy 4.60 requires an inmate monitor to observe an inmate who is placed on Level III Regular Watch every 15 minutes. (JA00027-28). It is denied that County policy requires officers to ensure that inmate monitors conduct their checks every 15 minutes. Correctional Officers are required to review the inmate monitor form and acknowledge at the end of their shift that the inmate monitor form was completed during the Officer's shift. (JA000028, Section A.6 and A.7).

96. Denied. The answering non-medical Defendants do not have any personal knowledge of these statements therefore said statements are denied. Moreover, employees of PrimeCare are

agents of the County or the individual County Defendants and therefore such statements cannot be considered an admission by any of the non-medical defendants.

97. Admitted with addition. "A tour of the housing area would be witnessing specifically, as per policy, living, breathing flesh, so to go around to every cell and ensure that each inmate is present, as well as alive roughly thirty minutes or prior to at that time period." (SA810-11).

98. Admitted with explanation. It is admitted that Bucks County uses inmate workers as a supplement to its watch policy due to the nature of the inmate population, which consists of persons addicted to drugs and who have various illnesses. It is admitted that Officers are expected to take their supervision responsibilities carefully. (SA00928:5-24; SA000929:1-11).

99. Admitted in part. Denied in part. It is admitted that Officer James Young had worked at BCCF for nine years on the 6:00 am to 2:00 pm shift. The remainder of the paragraph is denied because the record cite does not support the averments.

100. Denied. Officer Young would not regularly supervise people on various watch levels, as there could be no inmates on watch. (SA00862:2-8).

101. Denied. This is a mischaracterization of testimony.

102. Admitted.

103. Denied as stated. Admitted in part. It is admitted that Officer tours can be staggered. It is admitted that County directives requires a module officer to conduct a tour of the module not to exceed thirty minutes. (B-3.23, JA00025, p. 2).

104. Objection. This is a legal conclusion which is inconsistent with the law as the alleged failure of an inmate monitor to perform his duty does not impute liability to the module officer under 42 U.S.C. Section 1983. Officer Young never testified that failure of an inmate monitor to perform his duty is the same as if the officers failed to do their watches, therefore said averments

are denied as untrue and a mischaracterization of the testimony. Officer Young testified that an assigned module officer is required to review the inmate monitor form for accuracy pursuant to County directive. (SA 882:5-11). It is admitted that Officer Moody did testify, over objection, that "if inmate monitors don't do what they are supposed to do it is the same thing that you not doing the watches you are supposed to do." (SA 882:8-11).[1]

105.    Denied. Per County Directive B-4.60, "[a]n Inmate Monitor (worker) observes the inmate every fifteen (15) minutes. Utilizing the Inmate Monitor Form (IMF), the Inmate Monitor is responsible for documenting the inmate's activity and initialing the entry every fifteen (15) minutes. The Inmate Monitor is responsible for signing the form when they start a watch." (JA00028).

106.    Denied. Per County Directive B-4.60, "[t]he Module Officer will print and sign their name on the Inmate Monitor Form where indicated at the end of each shift acknowledging the form was completed throughout their shift. (JA00028).

107.    Denied. Officer Young did not know who Freitag was by name because he had he never had any complaints of trouble from Freitag and knew nothing about his case. (SA00883:5-15; SA00883:24; SA00884:1-2 ). Officer Young understood that Freitag had been on a regular watch at some point before August 24, 2018. (SA00884:7-8).

108.    Admitted that Officer Young escorted Freitag back to the B Module, where he was assigned to Cell 3. Officer Young further stated that he did not have any conversation with Freitag. (JA00055).

---

[1] The question which elicited the answer was timely objected to at Officer Moody's deposition. (SA00832:8-14). Officer Moody requests this Court to strike the question and answer from the record. Nor can the statement of Officer Moody be used against Officer Young as an admission under the Federal Rules of Evidence.

109.    Admit with exception.  On August 25, 2018, Defendants Moody and Young were the

officers assigned to B module.  They reported for duty at approximately 6:00 a.m. (Officer

Activity Log,  JA0000050, attached hereto as Exhibit 8).  Officer Murphy was a special

assignment officer on August 25, 2018, meaning he was not assigned to B module that day, but

he was there to provide breaks for Officers Moody and Young. (Exhibit 16, Murphy Deposition

21:8-21, 39:5-12, JA0000152, JA0000156).  Officer Murphy arrived on B module at

approximately 10:00 a.m. to temporarily relieve Officer Moody. (Exhibit 8, JA0000051).

110.    Admit with exception.  On August 25, 2018, at 9:11 am, Freitag left his cell to get his

medication. (Video of B Module beginning at 8:13 a.m. on Aug. 25, 2015, JA0000200,

Snapshots of Mr. Freitag's Movement 9:11 to 9:16 am, JA0000201(a)-(l), attached hereto as

Exhibit 23(a); Exhibit 17, Moody Deposition 87:2-88:1.)

111.    Admit with exception.  At 10:04 a.m., Officer Murphy observed Freitag in his cell.

(Exhibit 23, JA0000201; Snapshot of Officer Murphy 10:04 am Observation B3, JA0000201(m),

attached hereto as Exhibit 23(m); Onisick Incident Report dated August 25, 2018, JA0000054,

attached hereto as Exhibit 9). At 10:21 a.m., Officer Murphy observed Freitag in his cell. (Video

of B Module beginning at 10:13 a.m., JA0000202, attached hereto as Exhibit 24; Snapshot of

Officer Murphy 10:21 am Observation B3, JA0000202(a), attached hereto as Exhibit 24(a);

Exhibit 16, Murphy Deposition 35:5-25, JA0000155; Exhibit 9, JA0000054).

112.    Admitted.

113.    Admit with exception. Officer Murphy left B module at 10:40 a.m. (Exhibit 16, Murphy

Deposition 40:21; 41:1, JA0000157-58; Exhibit 24, JA0000202).

114.    Admit with exception.  No inmate worker had observed Freitag since 10:32 am.

115.    Admit with exception.  At 10:55 a.m., another inmate was walking by Freitag's cell, looked in, and saw Freitag bleeding on the bed.  The inmate called to Officers Moody and Young for assistance. (Exhibit 9, JA0000053-54; Exhibit 17, Moody Deposition 64:2-9, 65:11-15, JA0000169-70; Exhibit 24, JA0000202).

116.    Admit with exception.  Officer Moody went over to Freitag's cell, called into Freitag, and received no response. Officer Moody told Officer Young to call a medical emergency. (Exhibit 17, Moody Deposition 65:18-24, JA0000170; Exhibit 9, JA0000053, JA0000055).

117.    Admitted.

118.    Admitted.  It is admitted that Onisick Report, Ex. 9, JA 54, states what was observed at the scene of the investigation.

119.    Denied.  The answering Defendants are without sufficient information or belief to admit or deny these allegations, therefore said allegations are denied.  By way of further response, Dr. Ian Hood determined that the cause of death was "incised wounds of arms." (Exhibit 45, JA0000677; Exhibit 9, JA0000053; Exhibit 10, Hood Autopsy, JA0000059).

120.    Admitted.  It is admitted that Onisick Report, Ex. 9, JA 54, states what was observed at the scene of the investigation.

121.    Denied.  Dr. Sperry's opinion is without foundation and is speculative as the Plaintiffs have admitted the time that Freitag commenced cutting his arms is unknown.  (Pls. Response to County Defendant's SUMF, ECF No. 90-4, ¶ 59).  Plaintiffs admitted the time that Freitag lost consciousness is unknown.  (Pls. Response to County Defendant's SUMF, ECF No. 90-4, ¶ 60).  By way of further response, Dr. Sperry's opinions are not facts and therefore immaterial for purposes of summary judgment.

122. Denied. Officer Young did not state that he knew that Freitag was on a Level 3 watch at the cited portions of the record. Officer Moody did not state that he knew that Freitag was on a Level 3 watch at the cited portions of the record. Mr. Mitchell testimony is an assumption that unnamed module officers were alerted that Freitag was on a Level 3 watch.

123. Admitted in part. Denied in part. It is admitted that it appeared to Mitchell that Officer Young stood behind the podium for 34 minutes based on his review of the video during Mitchell's deposition. (SA00995:4-9). Officer Young waited at the podium because the inmates were returning from the yard at 10:45 a.m. (SA894:2-10). Officer Young made the determination that he should wait for the inmates to return from the yard before doing his tour. (SA894:10-12).

124. Admitted that Officer Murphy observed Freitag in his cell at 10:21 a.m. The remainder are denied as argumentative and immaterial.

125. Objection. The questions posed was as follows:

> Yeah. Sure. Let me say it a different way. Can we just agree, sir, that there -- this
> is a clear example of Officer Young not complying with his responsibilities
> under the suicide watch protocol?

> Counsel: Objection.

The question and any response which follows is improper because Freitag **was not on a suicide watch**. Without waiving objection, Freitag was on a level 3/regular watch. A level 3/regular watch "is not used for suicide prevention, but reserved for the inmate whose behavior warrants closer observation." (Exhibit 2, JA0000025; Exhibit 4, JA0000039). Under Level 3, the assigned correctional officers are required to observe all inmates, including inmates on this level of watch, in staggered intervals not to exceed 30 minutes and log their observations. On this level, an

inmate monitor observes the inmate every fifteen minutes and logs their observations on an inmate monitor form. (Exhibit 2, JA0000025; Exhibit 3, JA0000028; Exhibit 4, JA0000039; Moody Deposition, 45:4-9, N.T. 12/23/20, JA0000163, attached hereto as Exhibit 17; Pls. Response to County Defendant's SUMF , ECF No. 90-4, ¶15)(Plaintiff so admits).

126.   Admitted.

127.   Admitted.

128.   Admitted that the video surveillance footage shows Caldwell looking into Freitag's cell at at 8:47 am and 10:32 am.

129.    Denied. The purpose of the inmate monitor is to document the actions of the inmate on level 3 watch. Per County Directive B-4.60, "[a]n Inmate Monitor (worker) observes the inmate every fifteen (15) minutes. Utilizing the Inmate Monitor Form (IMF), the Inmate Monitor is responsible for documenting the inmate's activity and initialing the entry every fifteen (15) minutes.  The Inmate Monitor is responsible for signing the form when they start a watch." (JA00028); (Pls. Response to County Defendant's SUMF, ECF No. 90-4, ¶ 14)(Plaintiff so admits).

130.   Admitted that on December 23, 2020, Young had no recollection of Caldwell looking into Freitag's cell.

131.   Admitted that on December 23, 2020, Young had no recollection of looking at the form prepared by Caldwell.

132.   Objection.  These statements are not facts but argument and conclusions to which no response is required.  It is admitted, however, Freitag was out of his cell obtaining medication at 9:15 am.  On August 25, 2018, at 9:11 am, Freitag left his cell to get his medication. (Video of B Module beginning at 8:13 a.m. on Aug. 25, 2015, JA0000200, attached hereto as Exhibit 22;

Snapshots of Mr. Freitag's Movement 9:11 to 9:16 am, JA0000201(a)-(l), attached hereto as Exhibit 23(a); Exhibit 17, Moody Deposition 87:2-88:1); (Pls. Response to County Defendant's SUMF, ECF No. 90-4, ¶ 49)(Plaintiff so admits).

133.   Admitted that on December 23, 2020, Young (SA902:13-24; SA903:1-8 ) and Moody (SA00847:20-22) had no recollection of Caldwell looking into Freitag's cell.

134.   Denied.  This is a mischaracterization of the testimony.  Bucks County Policy 4.60 requires an inmate monitor to observe an inmate who is placed on Level III Regular Watch every 15 minutes.  (JA00027-28).  It is denied that County policy requires officers to ensure that inmate monitors conduct their checks every 15 minutes. Correctional Officers are required to review the inmate monitor form and acknowledge at the end of their shift that the inmate monitor form was completed during the Officer's shift.  (JA000028, Section A.6 and A.7).

135.   Denied.  These statements are argumentative and a mischaracterization of the testimony and are denied.

136.   Denied as stated.  Officer Young made the determination that he should wait for the inmates to return from the yard before doing his tour.  (SA894:10-12).

137.   Denied.  This is a mischaracterization of the testimony as well as argumentative and immaterial for purposes of summary judgment.

138.   Denied.  This is a mischaracterization of the cited testimony and therefore is denied. Young testified that an officer can review the forms as well as a supervisor. (SA 876:50:4-13).

139.   Admitted in part.  Denied in part.  It is admitted that officer Young stated at his deposition, "So they are paid $3 a day to stand in front of somebody's door and mark down whether they are sleeping, eating, pooping. Imagine what $3 a day gets you."  In response, Plaintiff's counsel stated "Well, if you and I were having a beer and having a conversation I

would understand what you are saying, but we are not, we are on the record in a formal deposition proceeding, so I am going to ask you to answer the question." (SA871:7-12). Officer Young then testified that if an inmate worker is not doing his job correctly or if the inmate worker needed to leave the module for any reason, he would assign another inmate worker. (SA871:13-24; SA872:1-13).

140. Admitted. It is admitted that Young stated: "That was $3 a day not well spent."

141. Denied as stated. Officer Young testified in response to the following objectionable question, "Is there anything that you could have 10 done to prevent Mr. Freitag's death?" Officer Young stated, "I am sure there is a lot of things everybody could have done to do that, but me personally, negative." (SA 855:9-16). The citation to Moody's deposition does not support any of the averments set forth in this paragraph, therefore said averments are denied.

142. Objection. The NCCHC does not set constitutional standards. "NCCHC establishes standards for health services in correctional facilities, operates voluntary accreditation program for institutions that meet those standards, produces resource publications, conducts educational conferences and offers certification for correctional health professionals." (https://www.ncchc.org/about). (ECF No 88-1, ¶¶ 69, 70-73). By way of further answer, Bucks County, in conjunction with PrimeCare, sought to voluntarily seek accreditation through the NCCHC to strive for best correctional health practices for the health and safety of BCCF's inmates. (ECF No. 90-4, ¶ 79)(Plaintiff so admits). It is denied that Bucks County was aware of problems regarding officers' supervision of inmate monitors in watch procedures as of 2016.

143. Admitted. In June 2016, NCCHC issued an accreditation report for BCCF indicating that it did not meet the NCCHC standard regarding Inmate Workers and Suicide Prevention Programs. (Exhibit 11, JA0000072, 79, 85). To satisfy those standards, NCCHC recommended corrective

action in the form of policy and procedure changes, staff training, submission of evidence that watches are occurring, and evidence that staff was made aware that they are to conduct watches with inmates "used as supplementary companions." (Exhibit 11, JA0000079, 85); (ECF No. 90-4, ¶ 74)(Plaintiff so admits).

144.  Admitted in part.  The County was committed to continued accreditation and issued plans of corrections when recommended by NCCHC. (Exhibit 63, Second Nottingham Deposition 20:22-21:4, JA0000799-800); (ECF No. 90-4, ¶ 79)(Plaintiff does not dispute Nottingham's deposition testimony.).

> In response to NCCHC's report, the County created three new watch forms distinguishing those used by correctional officers and inmate monitors. (Exhibit 12, JA0000121, 123-24; Exhibit 63, Second Nottingham Deposition 36:19-24, JA0000801); (ECF No. 90-4, ¶ 75)(Plaintiff so admits).

> The new forms also differentiated those used to monitor inmates on acute watch and those used to monitor inmates on regular watch. (Exhibit 12, JA0000121, 123-24; Exhibit 63, Second Nottingham Deposition 36:19-24, JA0000801);(ECF No. 90-4, ¶ 75)(Plaintiff so admits).

> Additionally, the County required correctional officers to make log entries on the computer after every thirty-minute tour was completed. (Exhibit 12, JA0000123); (ECF No. 90-4, ¶ 75)(Plaintiff so admits that the County implemented this change).

> When these changes were made, Officer were made aware of those changes during in-service training and roll call.  (SA001110:12-14).

145.  Admitted.

146.  Admitted.

147. Denied. These are not statement of facts but argument and immaterial for purposes of summary judgment. The training records were disclosed voluntarily as they were referenced in the Defendants' liability expert's report. Plaintiffs' Counsel never requested any training documents and admitted to the Court that he needed to depose Captain Nottingham a second time, through no fault of Defendants. By way of further response see responses to paragraph 146.

148. Denied. These are not statement of facts but argument and immaterial for purposes of summary judgment. By way of further response see responses to paragraph 146.

149. Denied. These are not statement of facts but argument and immaterial for purposes of summary judgment. By way of further response see responses to paragraph 146.

150. Denied. These are not statement of facts but argument and immaterial for purposes of summary judgment. By way of further response see responses to paragraph 146.

151. Denied as stated. Reed testified that she was aware that correctional officers would complain that there were too many inmates on watches to conduct all of their duties and responsibilities.

> Reed testified that the supervision of correctional staff were not in her direct command and stated that she could not really comment on whether officers were following procedure. (SA1139:9-18).

> Reed testified that she was unaware as to whether the Administration had confirmed that everybody was following the watch policies. (SA001144:1-14).

> Captain Nottingham testified that between the time period 2015 through 2018, when he was a Sergeant, he observed determined that an inmate monitor was assigned too many Level III inmates. Sergeant Nottingham recommended discipline for the officer that assigned the inmate monitor. (SA934:23-25; SA935:1-20).

152. Denied. Reed testified that she was unaware as to whether the Administration had confirmed that everybody was following the watch policies. (SA001144:1-14).

153. Denied. Reed testified that she was unaware as to whether the Administration had confirmed that everybody was following the watch policies. (SA001144:1-14).

154. Denied. Officer Young testified that he did not recall if any supervisor told him that inmate monitors were not doing their job or that the inmate monitor forms were fabricated. ( SA 875-76).

155. Admitted in part. Denied in part. It is admitted that Reed started her position as Deputy Superintendent of Programs in 2019. Reed testified that the supervision of correctional staff were not in her direct command and stated that she could not really comment on whether officers were following procedure. (SA1139:9-18), and therefore she would not be not aware of any changes made to watch policies before she took that position, therefore the remainder of the allegations are denied.

156. Denied. It is denied that there was no basis to conclude that the officers would actually check on Freitag and any such testimony is purely speculative and not based on personal knowledge. (SA 1144: 38:15-22). Moreover, Reed testified that the supervision of correctional staff were not in her direct command and stated that she could not really comment on whether officers were following procedure. (SA1139:9-18).

157. Denied. This purported unsworn statement should be stricken from the record because it does not contain the necessary jurat as required by 28 U.S.C. Section § 1746, as the statement is not subject to penalty of perjury. Exhibit 47 was produced in discovery by Freitag and fails to create genuine issues of material fact as to whether any Officer was deliberately indifferent to Freitag's serious medical needs.

158.    Denied.  Officer Young did not recall if anyone asked him about whether there was a watch.  (SA SA00887:11-14).  Officer Moody did not recall if Investigator Onisick asked him about whether the thirty-minute watch took place.  (SA00837:19-24; SA00838:1-2).

159.    Admitted.  It is admitted that Nottingham was not asked to review the conduct of the officers, post incident.

160.    Admitted.  Investigation of incidents, like an inmate death, is assigned to BCCF's Special Investigations Unit.

161.    Denied.  Mr. Bochenek testified that "we believed that it  was a suicide, and until all the documents were received, the Coroner's report and all the other  subsequent, then we concluded that it was definitely a  suicide.  But till that point in time, we continued to interview and look at different aspects to make certain  that there was no other involvement."  (SA001156:14-23).

162.    Denied.  Onisick testified that I wouldn't be able to tell you if an inmate monitor was **specifically assigned** to look at him or to watch him.  (SA001126:17-20)(emphasis added).

163.    Denied.  Mr. Bochenek testified that he "did not know if they [Young and Moody] were asked, and I do not know. I wasn't present."  (SA001155:17-20)

164.     Denied.  Mr. Bochenek testified that an inmate monitor's job is to call attention to correctional staff or medical staff if it's needed, such as a person who  might be at risk of hurting him or herself or maybe they're going through detox and have medical situations. (SA001163:22-25; SA001164:1-6).

165.    Admitted that Bochenek so testified.

166.    Denied.  The question presented was whether the inmate monitors observed Freitag in his cell. (SA001161:18-21)(clarification by Plaintiffs' Counsel).  It is admitted that the review of PrimeCare's mental health staff's took place after Freitag's death.

167.    Admitted as to what the memorandum states.

168.    Denied.  Inmate Monitor Caldwell checked on Freitag and looked into his cell at 10:32 a.m.  (Pls. Response to County Defendant's SUMF, ECF No. 90-4, ¶ 53).

169.    Denied.  Inmate Monitor Caldwell checked on Freitag and looked into his cell at 10:32 a.m.  (Pls. Response to County Defendant's SUMF, ECF No. 90-4, ¶ 53).

170.    Objection.  The testimony elicited from Mitchell was based on hypotheticals and each question was objected to as improper. Mitchell's personal opinions are not facts of record nor can his personal opinions be imputed to Officers Young and Moody, as there is no *respondeat superior* under 42 U.S.C. § 1983.

171.    See Response to paragraph 170.

172.    Objection.  The testimony elicited from Nottingham about Young's conduct was based on hypotheticals and each question was objected to as improper. Nottingham's opinions are not facts of record nor can his opinions cannot be imputed to Officer Young, as there is no *respondeat superior* under 42 U.S.C. § 1983.

173.    Denied.  The record cite does not state that "to fulfill their responsibility to ensure that inmate monitors have done their assigned jobs, officers and supervisors must review every single monitor form during the shift and at the conclusion of the shift."

174.    Denied  Nottingham testified that 'when officers fail to supervise inmate monitors, that presents an obvious risk." (SA00952:5-9).

175.    Objection.  The testimony elicited from Nottingham about Young's conduct was based on hypotheticals and each question was objected to as improper. Nottingham's opinions are not facts of record nor can his opinions cannot be imputed to Officer Young, as there is no *respondeat superior* under 42 U.S.C. § 1983.

176.    Objection.  The testimony elicited from Nottingham about Young's conduct was based on hypotheticals. Nottingham's opinions are not facts of record nor can his opinions cannot be imputed to Officer Young, as there is no *respondeat superior* under 42 U.S.C. § 1983.

177.    Objection.  Whether Nottingham did or did not speak to officers Young and Moody years after the incident is irrelevant to the whether these Officers were deliberately indifferent to Freitag's serious medical needs nor is relevant to the question of whether a County policy that pre-existed the date of the incident, caused Freitag's death.

178.    Denied. Plaintiff is offering evidence of subsequent remedial measures in an effort to create a material issue of fact in opposing the PrimeCare Defendants' Motion for Summary Judgment. Federal Rule of Evidence 407 precludes evidence of subsequent remedial measures to prove negligence or culpable conduct. Although summary judgment evidence maybe presented in a form which is inadmissible at trial, the party offering the evidence "must demonstrate that it could satisfy the applicable admissibility requirements at trial before the evidence may be used on summary judgment." *Robinson v. Hartzell Propeller, Inc.,* 326 F. Supp.2d 631, 645 (E.D. Pa. 2004), appeal dismissed, 454 F.3d 163 (3d Cir. 2006). This rule requires the proponent to demonstrate that there is more than a "mere possibility that the evidence will be admissible at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 600 (M.D. Pa. 2014)(quotations omitted). Thus, it is submitted that this Statement of Fact does not contain admissible evidence and should not be considered by this Court in deciding Defendants' Motion for Summary Judgment.

179.    186. *See* Response to paragraph 178, *supra*.

187.    -188. Admitted as to Dr. Perrien's opinion. It is denied that such an opinion creates a disputed issue of material fact. At most, this opinion shows a difference of opinion as to the

extensive care provided to Mr. Freitag. A difference of opinion does not establish deliberate or

reckless indifference to Mr. Freitag.


Date: June 21, 2022

_____

Jeffrey M. Scott, Esquire
Kerri E. Chewning, Esquire
ARCHER & GREINER
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA  19103
(215) 963-3300
Counsel for Defendants Bucks County,
Correctional Officer Moody, Correctional Officer Murphy,
and Correctional Officer Young

**CERTIFICATE OF SERVICE**

   I hereby certify that the Defendants County of Bucks and Correctional Officers

Moody, Murphy, And Young's Response to Plaintiff's Statement of Facts in Opposition to

Summary Judgment were electronically filed with the Court via CM/ECF, and available for

viewing.

Dated: June 21, 2022

<br>

<br>

               _____

                 Jeffrey M. Scott, Esquire

<br>

224870511v1