**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHARLES JOSEPH FREITAG, Jr., as ADMINISTRATOR of the ESTATE OF CHARLES JOSEPH FREITAG, SR.,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　　vs.<br><br>**COUNTY OF BUCKS, et al.**<br><br>　　　　　　　　　　**Defendants.** | **CIVIL ACTION**<br><br>**NO. 2:19-cv-05750** |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS COUNTY OF BUCKS AND CORRECTIONAL OFFICERS MOODY, MURPHY, AND YOUNG**

Jeffrey M. Scott
jscott@archerlaw.com
Alexis M. Way
away@archerlaw.com
Kerri E. Chewning, Esquire
kchewning@archerlaw.com
Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103-7393
(215) 963-3300
(215) 963-9999
Counsel for Defendants County of Bucks, Moody, Murphy, and Young

# **TABLE OF CONTENTS**

Defendants County of Bucks and Correctional Officers Moody, Murphy, and Young ("County Defendants"), hereby file this Reply Brief in Further Support of their Motion for Summary Judgment.

## I. INTRODUCTION

Despite this Court's clear directive, Plaintiff attempts to survive summary judgment by issuing general denials to the specific material facts set forth in the County Defendants' motion for summary judgment. Where vague and non-specific responses would not suffice, Plaintiff resorted to affirmatively altering deposition testimony and pitching arguments that contradict the "facts" relied upon and assumptions made by Plaintiff's own expert in an attempt to create disputed material facts that do not exist.

Plaintiff further attempts to obfuscate the actual facts that are <u>material</u> to his claim that Defendants failed to <u>prevent</u> Decedent's suicide by speculating that the County Defendants <u>could</u> have done more to rescue Decedent from his own actions. In doing so, Plaintiff repeatedly blurs the line between medical/mental health care and the custody function performed by prison officials. Plaintiff also strains the reading of cases cited in support of his "theories" of liability.

Even in light of Plaintiff's contrived record, the County Defendants' motion for summary judgment should be granted because Plaintiff admits the correctness of the most critical and material facts relative to his claims. Plaintiff fails to refer this Court to countervailing facts that the most critical, material facts focused on Plaintiffs' claim of deliberate indifference as to the individual officer defendants as well as the County on the claim based on <u>Monell</u>.

## II.    ARGUMENT

### A.    Plaintiff's Opposition Admits Critical Facts, Fails to Meet the Facts Set Forth in the County Defendants' Statement of Facts, and Relies on a Contrived Record.

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006). Plaintiff fails to fulfill this basic obligation and as such, the County Defendants' motion for summary judgment should be granted.

Plaintiff's opposition is rife with general denials of the specific, individual statements of undisputed material facts set forth in the County Defendants' motion. The Policies and Procedures set forth by this Court require:

> The respondent shall file, in opposition to the motion for summary judgment, a separate Statement of Disputed Facts, responding to the numbered paragraphs set forth in the movant's Statement of Undisputed Facts, which the respondent contends present a genuine issue to be tried. The respondent shall also set forth, in separate paragraphs, any additional facts which the respondent contends preclude summary judgment.
>
> …
>
> All material facts set forth in the Statement of Undisputed Facts required to be served by the movant shall be admitted unless specifically controverted by the opposing party.
>
> …
>
> Statements of material facts in support of or in opposition to a motion for summary judgment shall include specific and not general references to the parts of the record which support each of the statements.

Plaintiff's opposition contravenes these basic and well-known, requirements. Rather than respond directly to the facts set forth in the County Defendants' Statement of Undisputed Material Facts, Plaintiff relies on general denials and skepticism about the substance of witness's

2

statements. Plaintiff fails to set forth actual facts, with a citation to the record, to dispute the majority of the facts set forth by the County Defendants.

Indeed, Plaintiff admits the critical facts which require that summary judgment be granted. The most critical of those facts are highlighted below:

> 20. On June 8, 2018, PCM Defendant James removed Freitag from level 3 watch. (Exhibit 45, JA0000444).
> **Response**: Admitted.
>
> 24. From August 1 to August 17, Freitag had eight visits with mental health care employees. He denied suicidal ideation on each occasion. On seven of the visits, Freitag denied mental health concerns and mental health care employees noted that he appeared a low risk of self-harm. (Exhibit 45, JA0000521-26; Exhibit 58, JA00000760).
> **Response**: Admitted only that the records reflect as indicated. Denied to the extent the assertion suggests that Mr. Freitag did not have mental health concerns or that mental health care employees believed Mr. Freitag not to be at risk of suicide. PS 40-60.
>
> 25. Mr. Freitag was seen by PCM medical providers on August 1st, 3rd, 6th, 10th, 14th and 15th. (Exhibit 58, JA0000760; Exhibit 45, JA0000522-26).
> **Response**: Admitted.
>
> 26. On August 17, 2018, seven days before Freitag's sentencing, PCM Defendant Penge removed Freitag from level 3 watch. (Exhibit 45, JA0000444, JA0000521-22).
> **Response**: Admitted.
>
> 36. When Freitag returned from sentencing, he did not express any suicidal ideations or self-harm, to any BCCF employee; or to his brother, whom he spoke to, after returning to BCCF. (Deposition of Robert Freitag, 45:18-48:14, JA0000792-95, attached hereto as Exhibit 62).
> **Response:** Admitted as to Mr. Freitag's discussion with his brother, Robert Freitag. Denied as to "any BCCF employee," as the cited record evidence does not reference any such interactions. Denied also as the record evidence does not establish that Mr. Freitag was given an opportunity—in an encounter with a Bucks County employee or a PrimeCare employee—to discuss any ideation regarding suicide or self-harm.
>
> 44. Officers Moody, Murphy, and Young did not know about Freitag's prior suicide attempts. (Exhibit 17, Moody Deposition 57:6-11, JA0000168; Exhibit 18, Young Deposition 15:12-15, JA0000176; Murphy Deposition 33:17-34:14, N.T. 3/25/21, JA0000153-54, attached hereto as Exhibit 16).
> **Response:** Admitted only that the defendants testified as such. Denied to the extent this assertion suggests the truthfulness of this testimony in light of circumstantial evidence to the contrary as outlined in Section IV.C.1.a.ii of plaintiffs' opposition to defendants' summary judgment motion.

3

47. Officer Moody had no knowledge of Freitag being placed on suicide watch on any previous occasions. (Exhibit 17, Moody Deposition 57:1-8, JA0000168).
**Response:** Admitted only that the defendants testified as such. Denied to the extent this assertion suggests the truthfulness of this testimony in light of circumstantial evidence to the contrary as outlined in Section IV.C.1.a.ii of plaintiffs' opposition to defendants' summary judgment motion.

48. Officer Young recalled Freitag being placed on regular watch on "at other times" prior to August 25, 2018. (Exhibit 18, Young Deposition 60:3-8, JA0000184).
**Response:** Admitted.

59. The time that Freitag commenced cutting his arms is unknown.
**Response**: Admitted only that the precise time is unknown. By way of further response, the circumstantial evidence demonstrates that Mr. Freitag started cutting his arms after Hugh Caldwell's observation at 10:32:19 am. See supra ¶ 53.

60. The time that Freitag loss consciousness is unknown.
**Response**: Admitted only that the precise time is unknown. By way of further response, forensic pathology expert testimony suggests that at least 15 minutes elapsed between the time when Mr. Freitag started cutting himself and when he could not be saved. PS 121.

Pl.'s Resp. to Cty. Defs.' Stmt of Facts ¶¶ 20, 24, 25, 26, 36, 44, 47, 48, 59, 60.

In light of these admitted facts, Plaintiff resorts to changing the deposition testimony that does not serve his arguments. Although it is detailed more fully in the County Defendants' response to Plaintiffs' 190 Paragraph Statement of Facts, Plaintiff substituted a pivotal word into the transcript from the deposition testimony of Officer Young. See Pl.'s Stmt. of Facts ¶6. In an attempt to support Plaintiff's position that self-harm is "common," in the general prison setting, Plaintiff altered Officer Young's testimony to insert a word that was not stated nor intended.

> Self-harming activity is common among the prison population at BCCF. Even if they do not intend to kill themselves, people are screaming for help "all the time" and engage in "superficial [cutting] for attention."

Pl.'s Stmt of Facts ¶6. In reality, Officer Young's testimony was as follows:

> It is the holiday season, no one wants to be in jail so a lot of them do superficial **things** for attention.

4

Cty Defs.' Reply Stmt of Facts ¶ 6 (Young Dep., Ex. 18 Supp., 51:1-25, 77:18-22, SA 877, 888)(emphasis added). Plaintiff cannot create issues of fact by altering the actual evidence.

Plaintiff's opposition also contravenes the factual assumptions given to Plaintiff's financial expert. In arguing that Officers Moody and Young had knowledge that Plaintiff was particularly vulnerable to suicide <u>and</u> that there was a strong likelihood of him attempting suicide, Plaintiff relies on the "circumstantial" evidence of Decedent's former employment. Plaintiff argues that the officers should have known that Mr. Freitag's particular vulnerability and strong likelihood of attempting suicide were enhanced by his sentencing and Decedents' "[k]nowing he would spend at least the next six years in prison <u>meant the end of his 25-year career</u>, which had been a source of great pride." Pl.s' Br. at 29.

First, Plaintiff just assumes that Officers Young and Moody knew anything at all about Mr. Freitag's employment or how his sentence could impact it. Second, this statement also contradicts the factual assumptions made by Plaintiff's economic expert, Andrew Verzilli. The Verzilli report, included in the Joint Appendix, calculates Decedent's lifetime earning capacity "assuming that Mr. Freitag would have returned to his employment with the USPS, based on the following release dates." <u>See</u> Exhibit 26, JA0000315.

Creating these internal inconsistencies in Plaintiff's own evidence are not disputed issues of fact precluding summary judgment. As Plaintiff has failed to meet the facts set forth by the County Defendants, summary judgment should be granted.

**B.    Plaintiff Fails to Come Forward with Admissible Facts Establishing Deliberate Indifference as to the Individual Officers and Moody and Young are Entitled to Qualified Immunity.**

Plaintiff's opposition to summary judgment as to Young and Moody boils down to Plaintiff's disagreement with the <u>medical decision</u> made by PCM to remove Plaintiff from all levels of supervision for his mental health. In opposing the arguments in support of summary

5

judgment as to the Individual Officers, Plaintiff simply cites back to the facts that were purportedly known to the medical personnel. See Pl.'s Br. at 29 (citing to "*Supra* § IV.B.1.a" that "Penge and Mahoney knew Mr. Freitag had multiple prior suicide attempts…").

That disagreement does not create a constitutional claim for deliberate indifference. Decedent was not on a suicide watch. Deputy Warden Mitchell's decision to put Mr. Freitag on a Level 3 watch does not support Plaintiff's theory of the case. Nor does it provide any facts to allow Plaintiffs' claims against the Individual Officers to survive summary judgment.

In order for the missed round to be material, Plaintiff would need to come forward with evidence that the Decedent engaged in the act of cutting himself between 10:51 and 10:55. Plaintiff cannot come forward with any such evidence. In fact, Plaintiff ADMITS that the exact time Decedent began cutting cannot be identified. See Pl.'s Resp. to Cty. Defs.' Stmt of Facts ¶59. Plaintiffs' expert explains that it would have taken at least 15 minutes for Plaintiff to bleed out and expire as a result of his wounds. See Pl.'s Supplemental Stmt. of Facts ¶121. Taking this conclusion in the light most favorable to Plaintiff, the single round that was delayed beyond 10:51 a.m. cannot, as a matter of law, establish any deliberate indifference.

Rather than acknowledging this deficiency, Plaintiff attempts to impute the knowledge of the medical personnel to Moody and Young. Indeed, Plaintiff's only citation in the opposition regarding Young and Moody's knowledge resorts to the information in the possession of the medical personnel. See Pl.'s Br. at 29 (citing to Plaintiff's arguments regarding Medical Defendants Penge and Mahoney). Plaintiff does not cite to any facts – disputed or otherwise – which demonstrate that Officers Young and Moody had the same knowledge or information about Decedent's history of suicide attempts or his discussion of "anxiety" with medical

6

personnel. Plaintiff's failure to identify and articulate these specific facts demands summary judgment in favor of Young and Moody.

Plaintiff also attempts to call into question the credibility of Officer Young's sworn testimony. Plaintiff's argument is built upon counsel's apparent assessment that Young was "dismissive" of mental health issues. See Pl.'s Br. at 31. But to arrive at this conclusion, Plaintiff alters the actual disposition testimony given by Young. Plaintiff substituted his preferred testimony involving "cutting" for Young's actual testimony that inmates seek attention during the holiday season with superficial "things." Cty Defs.' Reply Stmt of Facts ¶ 6 (Young Dep., Ex. 18 Supp., 51:1-25, 77:18-22, SA 877, 888)(emphasis added). These types of liberties with the actual facts should not be rewarded.

It is "axiomatic that 'a nonmoving party … cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect.'" Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 130 (3d Cir. 1998). Thus, "concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id.

Plaintiff's cavalier approach to the facts in this case carries over to Plaintiff's construction of the applicable law. Plaintiff argues that the failure of Young and Moody to conduct one timely round amounts to deliberate indifference. In making this argument, Plaintiff cites to several district court cases which purport to so hold. Plaintiff, again, distorts the record. In Keohane v. Lancaster Cnty, the Court denied summary judgment only as to one defendant but did so not only because of insufficient supervision, but also because the defendant in question indisputably had knowledge of the inmate's status on suicide watch. See No. CIV. A. 07-3175,

7

2010 WL 3221861, at *10 (E.D. Pa. Aug. 13, 2010). Critically, here, it is undisputed, Mr. Freitag was NOT on suicide watch. See Cty Defs.' Stmt of Facts ¶6 ("On August 17, 2018, seven days before Freitag's sentencing, PCM Defendant Penge removed Freitag from level 3 watch. (Exhibit 45, JA0000444, JA0000521-22). **Response:** Admitted.").

Further, as noted, Plaintiff has failed to demonstrate any knowledge on the part of either Young or Moody regarding Mr. Freitag's previous mental health history. Nor can Plaintiff establish deliberate indifference because Deputy Warden Mitchell decided to put Decedent on a Level 3 watch. Mitchell's actions are the antithesis of deliberate indifference. Having been alerted to Decedent's history, he acted on that knowledge and provided some level of supervision even though it was not medically necessary. The fact alone that Decedent was on a Level 3 watch would not be sufficient to put Young or Moody on notice that Mr. Freitag had a particular vulnerability to suicide.

Thus, although Plaintiff acknowledges that "actual knowledge" is required, see Pl.'s Br. at 36, to establish deliberate indifference on the part of Young and Moody, Plaintiff simply glosses over the lack of evidence to demonstrate this critical requirement. This failure is fatal to Plaintiff's deliberate indifference claim as to the Individual Officers.

Even if Plaintiff had managed to point to facts suggesting that a jury could find deliberate indifference on the part of Young and Moody, they would be entitled to qualified immunity. Plaintiff's only argument in opposing application of qualified immunity is to rely on the broadest right – that corrections officers cannot be recklessly indifferent to a known particular vulnerability to suicide. See Pl.'s Br. at 35. This broad definition is not sufficient. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638 (3d Cir. 2015) ("courts must define the right allegedly violated at the appropriate level of specificity."). Plaintiff's reliance on Nealman v.

8

Laughlin, No. 1:15-CV-1579, 2016 WL 4539203, at *7 (M.D. Pa. Aug. 31, 2016) is misplaced. That Court merely evaluated whether the plaintiff there had alleged sufficient facts in deciding a motion to dismiss. Here, Plaintiff fails to come forward with actual facts.

Plaintiff's proposed definition leaves out the critical – and admitted, unrebutted fact – that Decedent was cleared by medical personnel and taken off of a suicide watch. Plaintiff does not cite to any robust consensus of cases where medical personnel took an inmate off of suicide watch but correctional officers were nevertheless required to ensure they did not commit suicide. As such, Plaintiff's proposition is not "beyond debate" and Officers Young and Moody are entitled to qualified immunity. See id. at 639.

### C. Plaintiff's Monell Claim Fails.

At best, according to Plaintiff's own admissions, there was a singular violation of the watch policy pertinent to Mr. Freitag when Officer Young failed to conduct one specified round at exactly the time it should have occurred. Such a violation alone is not enough to establish a constitutional violation and it certainly cannot support any liability under Monell. To be sure, Plaintiff fails to point to facts establishing any underlying constitutional violation by either Young or Moody, there is no Monell liability that can be ascribed to the County. Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003)

Plaintiff also fails to point to any facts to support an ongoing and pervasive disregard for the thirty minute watch procedures required for Level 3 watches. Rather, Plaintiff makes broad and non-specific statements about a purported "custom" to ignore the watch policies. See Pl.'s Br. at 38. In support of this contention, Plaintiff argues that it was well-known that officers complained "hundreds of times" about watch procedures. See Pl.'s Br. at 39. But Plaintiff once again takes liberty with the actual testimony. First, generalized complaints about the structure of the watch program in general do not evidence a general tolerance for officers failing to adhere to

9

the policy about which they are complaining. Additionally, Deputy Superintendent Reed testified that she was unaware as to whether the Administration had confirmed that everybody was following the watch policies. See Cty. Defs.' Resp. to Pl.'s Supp. Stmt. of Facts ¶153.

Plaintiff did not conduct any discovery on any purported pervasive disregard for the established watch policies. Plaintiff does not cite to any facts demonstrating a failure to discipline officers who failed to follow the policy or repeat violations of the policy related to Level 3 watches, such as the one on which Mr. Freitag was placed. Nor does Plaintiff cite to any facts establishing that the watch policy was disregarded as to Mr. Freitag on any more than the one singular occasion giving rise to this action. Plaintiff failed to demonstrate any custom or practice of disregarding the applicable policy. Therefore, Plaintiff cannot establish any claim against the County of Bucks.

### III. CONCLUSION

Based on the foregoing reasons, Defendants County of Bucks and Correctional Officers Moody, Murphy, and Young request that summary judgment be granted in their favor. Defendants request this Court dismiss all claims asserted against them with prejudice.

Dated: June 21, 2022

Jeffrey M. Scott, Esquire
Kerri E. Chewning, Esquire
Alexis M. Way, Esquire
ARCHER & GREINER
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
(215) 963-3300
Counsel for Defendants Bucks County,
Correctional Officer Moody, Correctional Officer Murphy,
and Correctional Officer Young

224870820v1